```
              UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,     )  Case No. CR04-00053DAE
                              )
          Plaintiff,          )  Honolulu, Hawaii
                              )  May 11, 2007
                              )  2:00 p.m.
     v.                       )
                              )
SILVER JOSE GALINDO,          )     COPY
                              )
          Defendant.          )
_____)


     TRANSCRIPT OF DEFENDANT'S MOTION TO SEVER OFFENSES
           BEFORE THE HONORABLE BARRY M. KURREN
              UNITED STATES MAGISTRATE JUDGE.

APPEARANCES:

For the Plaintiff:        U.S. ATTORNEY'S OFFICE
                          By: DARREN CHING, ESQ.
                          300 Ala Moana Boulevard, #6100
                          Honolulu, Hawaii 96850

For the Defendant:        JACK SCHWEIGERT, ESQ.
                          550 Halekauwila Street, #309
                          Honolulu, Hawaii 96813




Transcriber:              Jessica B. Cahill
                          P.O. Box 1652
                          Wailuku, Maui, Hawaii 96793
                          Telephone: (808)244-0776




Proceedings recorded by electronic sound recording, transcript
produced by transcription service
```

EXHIBIT 2

```
 1            THE CLERK:  Criminal number 04-00053DAE, USA versus
 2   Silver Jose Galindo.  Motion -- excuse me, defendant's motion to
 3   sever offenses.
 4            MR. CHING:  Good afternoon, your Honor, Darren Ching
 5   on behalf of the United States.
 6            THE COURT:  Good afternoon.
 7            MR. SCHWEIGERT:  And good afternoon, your Honor, Jack
 8   Schweigert on behalf of Mr. Galindo who's with me.
 9            THE COURT:  Yes, good afternoon.
10            MR. SCHWEIGERT:  Your Honor, if I can embellish my
11   motion a little bit by --
12            THE COURT:  Sure.  Absolutely.
13            MR. SCHWEIGERT:  -- by some facts?
14            THE COURT:  Uh-huh.
15            MR. SCHWEIGERT:  Because I don't know that it comes
16   clear from the indictment really what is involved in the
17   different counts.  It just reads, you know, felon in possession
18   and et cetera, et cetera.
19            If you take a look at them I -- I have broken them
20   down into what I consider to be five groups of incidents.  The
21   first group of incidents -- the first group of incidents deals
22   with Counts 1, 2, and 3, whereon a certain date, March 11th, my
23   client is believed to be a felon with a gun.  Also, having meth
24   with the intention of distributing it.  And also because he had
25   a gun using it in furtherance of a drug crime.
```

1        Now, that's totally different from what happens on
2   February 29th, which is Count number 4.  So, you got three
3   events on March 11th, and now we're moving into Count 4 which is
4   a single event based totally on circumstantial evidence of a gun
5   found in a house on February 29th, '04.  Different date.
6        That's totally different than the events that comprise
7   Counts 5, 6, and 7, which are -- really amount to torture.
8   They're alleging my client basically tortured a guy, and he used
9   a gun when he tortured him.  And he also was a felon with a gun.
10  So, those are separate and got nothing to do with 1, 2, 3, or 4.
11  And now, we're dealing with 5, 6, 7.
12       Count 8 -- and they're all different dates.  Count 8,
13  is now dealing with an incident where my client's alleged to be
14  found asleep in a -- in a restaurant called the Golden Coin.
15  And at that time he's got a gun which is different than 9, 10,
16  and 11.
17       And to tell you the truth I'm not real sure of the
18  event that's dealt with in 9, 10, and 11, because there's really
19  two people, who from the discovery could have been robbed about
20  this time.  It sounds like they're alleging my client is robbing
21  other drug people.  That's not what I'm picking up, but there's
22  really two sets of people that could have been robbed on those
23  dates.
24       But be that as it may they are -- the only thing that
25  ties them if -- if word ties kind of -- I use that with tongue

1   in cheek in a motion like this.  The only thing that -- that
2   brings one to the other is that my client has a gun.
3           Certainly joinder was improper, because there's really
4   no common scheme.  We're dealing with different factors.  But --
5   but more than that severance has -- has got to be thought of in
6   the sense that -- I mean in the one count, the ones that to me
7   really will potentially frost the jury are Counts 5, 6, and 7.
8   If there was anything that had to be severed from the rest I
9   would hope it would at least be 5, 6, and 7.
10          Because 5, 6, and 7 deal with an incident on January
11  23rd, where my client's basically alleged to have tortured a guy
12  who I believe will be -- he's a -- he's a criminal defendant
13  himself.  He is looking for a downward departure himself.  He is
14  presently I believe out of FDC waiting for that and giving
15  testimony based on that.  But that -- that charge is grossly
16  prejudicial, your Honor.  And in view of the fact of what he has
17  alleged to have done in Count number 6 of the 5, 6, and 7, is
18  use a set of pliers on some guy's finger to basically torture
19  him into giving false testimony.
20          And with that as a premise a jury hearing that set of
21  facts it's going to inure all the other counts, your Honor, and
22  many of which are based on totally circumstantial evidence such
23  as Count number 4 which is going to be totally circumstantial
24  evidence.  Count number 1, 2, and 3 which is going to be
25  circumstantial evidence.

1          So, we're basically coming to you seeking fundamental
2   fairness in the hopes that we just don't get -- my client
3   doesn't get carried away just because of the one count which to
4   me is the one dealing with the alleged torture.
5          So, I would ask as -- as a bare bones minimum that you
6   sever 5, 6, and 7 from the remaining counts.
7          THE COURT:  Well, you know, the only problem with that
8   is -- aren't the charges in 5, 6, and 7 arising out of the same
9   transaction as some of these other counts?
10         MR. SCHWEIGERT:  No, they're all separate.  They're
11  all different.  They're all different dates.
12         THE COURT:  5, 6, and 7 is completely separate from
13  the others?
14         MR. SCHWEIGERT:  5, 6, and 7 is something that
15  allegedly happened on January 23rd.  4 is -- is a different date
16  altogether.  It's a gun found in a guy's house in Haleiwa named
17  Taznisky (phonetic) and was found under a bed in Taznisky's
18  bedroom.  And they're saying that -- I mean it's got nothing to
19  do -- that -- that particular finding of a gun on February 29
20  with the -- with the actions spoken of in Counts 5, 6, and 7.
21         It's basically just, you know, my guy's going to be
22  thought of as a bad guy, because I mean some of it's going to
23  inure to him and some of it's going to -- that inures to him is
24  going to carry over into the others, and they're going to start
25  off with the words torture at the beginning in Count number 6.

```
 1                   So, I would ask that you at least sever 5, 6, and 7 --
 2              THE COURT:  Okay.
 3              MR. SCHWEIGERT:  -- from the remainder counts.
 4              THE COURT:  Well, you know, Mr. Ching, you know,
 5   severance is -- is really, you know, not -- not well thought of
 6   generally, and -- and there's a strong presumption against it.
 7              You've got so many different charges here, you know,
 8   many of which are really unrelated to other charges.  Isn't --
 9   isn't there a real chance that the overload of having these all
10   together really inures to the defendant's detriment and that
11   this is the kind of situation that sort of calls out for
12   separating some of the stuff?
13              MR. CHING:  Your Honor, if I could back up first.  I
14   think there's no real argument that at least as far as the five
15   separate incidents those incidents should be kept together.  I
16   mean there may be three counts in Count -- excuse me, in
17   incident number 1, 3, and 5.  And I don't hear any argument that
18   those counts themselves should be severed.
19              So, based on that the Government's position is the
20   five incidents are properly joined, because the common thread
21   that runs through all of them is the -- the felony possession
22   count.  And that has been ruled proper by the Ninth Circuit in
23   not only Lopez, but in a Fifth Circuit case Blake where there
24   were incidents where it dealt with a felon in possession, some
25   other crimes, and then on a different date there are felony
```

1  possessions and other crimes.  And the joinder of those two were
2  proper as well as the not severing of those counts were proper.
3         The Court felt that it was -- it was enough that the
4  jury was properly instructed and that they were told to consider
5  the counts separate.  And I think if you rely on the indictment
6  in this case, and then apply it to the caselaw provided that
7  both the joinder is proper as well as severance is not required.
8         THE COURT:  And -- and why?  Why -- why -- why -- why
9  really is it -- is it -- is it proper to have all of these
10 together?
11        MR. CHING:  Again, the joinder throughout all five
12 incidents involved the felon in possession count.  So, at every
13 incident he's a felon possessing a firearm.
14        THE COURT:  Right.  But they're all completely
15 separate.
16        MR. CHING:  Correct.  They --
17        THE COURT:  There's no -- there's no -- there's no tie
18 to them.  There's no -- it's no, like, common plan; is it?
19        MR. CHING:  No, it's not.  It's -- it's the same or
20 similar crime, the felony possession throughout each of the five
21 incidents.  The five incidents which have separate crimes are
22 based on the same transaction.  So, the common thread is the
23 felon in possession.
24        THE COURT:  So, clearly, you know, I mean we're not
25 going to have like five trials.  That's just not going to

1   happen.

2   MR. SCHWEIGERT: I understand that, your Honor.

3   THE COURT: But what about Mr. Schweigert's point that
4   at least taking out at least the one with the most, you know,
5   inflammatory evidence from the others as -- as a -- as sort of a
6   compromise to, you know, not -- not splitting them up? I mean I
7   -- I -- I have problems with the argument that just merely being
8   a felon in possession is enough to mean that you can -- you can
9   lump them all together.

10   MR. CHING: Well, according --

11   THE COURT: I mean court -- courts may have up --
12   upheld that, but -- but I think, you know, some exercise of
13   discretion here to -- for -- for fundamental fairness of the
14   defendant would require some separation.

15   MR. CHING: -- well, I think other than Mr. Schweigert
16   just claiming that you put them all together and the defendant's
17   going to be painted in an unfavorable light, well, he has
18   committed these crimes.

19   With regard to whether or not they should be severed
20   the -- the trial court can make that decision during trial. So,
21   depending on how the evidence develops that call can be made by
22   the trial court judge.

23   THE COURT: Okay. I'm going to make that call now. I
24   -- I think -- I think, you know, there -- there is real risk of
25   -- of potential prejudice by having all of these together. On

1  the other hand, you know, having five separate trials makes no
2  sense at all.  But I'm going to take the -- the most
3  inflammatory ones out 5, 6, and 7, and I'm going to sever.  You
4  can bring this up with Judge Ezra, Mr. Ching, to see if he
5  agrees.
6          MR. CHING:  Yes.
7          THE COURT:  But that's my view of it.  I -- I think,
8  you know, while I recognize that -- that severance is -- is --
9  is certainly not the preferred course, joinder is -- is -- is
10 most definitely the -- the -- the standard, you know, way to go.
11         In this case, these are completely different.  Mere --
12         MR. CHING:  Well, your Honor --
13         THE COURT:  -- I'm sorry, Mr. Ching.
14         MR. CHING:  -- if -- if may just interrupt.  They're
15 -- they're not -- they're completely separate in a sense that
16 they involve different dates.  They do involve similar
17 witnesses.  So, for example, at least with regard to joinder the
18 Court only can look at the indictment.  So, I -- I didn't bring
19 up the specific facts of -- of each incident, but Mr. Schweigert
20 has.
21         With regard to Count -- excuse me, the incident that
22 occurred on January 23rd, 2004, Counts 5, 6, and 7 --
23         THE COURT:  Uh-huh.
24         MR. CHING:  -- there will be testimony by witnesses
25 that would relate to that incident as well as Count 4 which is

```
 1  the February 29th incident.
 2          THE COURT:  In other words, the same witness.  The
 3  same witnesses.
 4          MR. CHING:  Right.
 5          THE COURT:  Yeah.
 6          MR. CHING:  It would be pointing to the defendant
 7  carrying certain firearms and -- and the witnesses would be
 8  similar.
 9          THE COURT:  Yeah.  Okay.  I -- you know, with all due
10  respect I think in this case, you know, there is -- there is a
11  good basis for it.  I don't think I've ever even done this
12  before, actually a severance over here.  And -- and -- but, you
13  know, in this case I've -- I've -- I've looked at this, I've
14  given this some careful thought.  I -- I didn't know how to -- I
15  wasn't going to order five different trials, and I -- I think at
16  least taking that out, you know, along the lines that you're
17  advocating would make some sense.
18          So, I'm going to grant the motion to sever but 5, 6,
19  and 7 only.
20          MR. SCHWEIGERT:  Thank you very much, your Honor.
21          THE COURT:  And, Mr. Schweigert, why don't you prepare
22  an order for the file.  Mr. Ching, you're going to take an
23  appeal.
24          MR. CHING:  Yes.
25          THE COURT:  Why don't you do that, and then before we
```

```
 1  reload -- when's the trial date in this case?
 2          MR. SCHWEIGERT:  June 4, your Honor.
 3          MR. CHING:  No, it -- it got continued to July.
 4          MR. SCHWEIGERT:  Oh, wait.  July something.
 5          MR. CHING:  July 10th.
 6          THE COURT:  Okay.  Good.  So, rather than set a
 7  separate trial now have it reviewed by Judge Ezra.
 8          MR. CHING:  Yes, your Honor.
 9          THE COURT:  And then we'll see where we are and if we
10  need to get back to reset based on what he rules fine.
11  Otherwise, we'll, you know, stay on course.  In other words, I
12  won't set a separate trial now, but we'll make a note to, you
13  know, let him know so that this is the way it will go.
14          MR. SCHWEIGERT:  Thanks very much, your Honor.
15          THE COURT:  Okay.  Stand in recess.
16          (At which time the above-entitled proceedings were
17  concluded.)
18
19
20
21
22
23
24
25
```

```
 1
 2
 3                         CERTIFICATE
 4      I, court approved transcriber, certify that the
 5  foregoing is a correct transcript from the official electronic
 6  sound recording of the proceedings in the above-entitled matter.
 7      Dated this 23rd day of May, 2007.
 8
 9                    _____
10
11                            Jessica B. Cahill
12
```