EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

DARREN W.K. CHING   #6903
Assistant U.S. Attorney
PJKK Federal Bldg., Room 6-100
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: Darren.Ching@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-00053 DAE |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S OPPOSITION TO |
| | ) | DEFENDANT'S MOTION IN LIMINE |
| vs. | ) | REGARDING "UNITED STATES |
| | ) | WRITTEN NOTICE PURSUANT TO |
| SILVER JOSE GALINDO, | ) | FEDERAL RULE OF EVIDENCE |
| aka Daniel S. Galindo, | ) | 404(b) DATED DECEMBER 27, |
| aka Timothy Mau, | ) | 2006"; CERTIFICATE OF SERVICE |
| | ) | |
| Defendant. | ) | |
| | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN
LIMINE REGARDING "UNITED STATES WRITTEN NOTICE PURSUANT
TO FEDERAL RULE OF EVIDENCE 404(b) DATED DECEMBER 27, 2006"

TABLE OF CONTENTS

TABLE OF AUTHORITIES

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . I

I.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . 1

      A.   March 11, 2004 . . . . . . . . . . . . . . . . . 2

      B.   February 29, 2004 . . . . . . . . . . . . . . . 4

      C.   January 23, 2004 . . . . . . . . . . . . . . . 4

      D.   September 6, 2003 . . . . . . . . . . . . . . . 7

      E.   July 31, 2003 . . . . . . . . . . . . . . . . . 8

II.   STATEMENT OF THE LAW . . . . . . . . . . . . . . . . 10

      A.   Statement of Law Regarding Admissibility of
           Evidence That is "Inextricably Intertwined."
           . . . . . . . . . . . . . . . . . . . . . . . 10

      B.   Statement of Law Regarding Admissibility of
           404(b)evidence . . . . . . . . . . . . . . . . 11

III.  DISCUSSION . . . . . . . . . . . . . . . . . . . . . 13

      A.   Defendant's Involvement with Robert TOMASZYCKI's
           Drug Distribution Including but Not Limited to How
           and Why TOMASZYCKI Involved Defendant in His Drug
           Distribution. . . . . . . . . . . . . . . . . 13

      B.   Defendant's Possession and Use of Firearms on Occasions
           Other than Those Named in the Indictment.  . . . . 14

      C.   Defendant's Possession [ ] of Drugs [in Distributional
           Amounts] on Occasions Other than Those Named in the
           Indictment . . . . . . . . . . . . . . . . . . 15

      D.   Defendant's Involvement with Dan LANGAMAN's Drug
           Distribution Including but Not Limited to How and
           Why LANGAMAN Involved Defendant in His Drug
           Distribution . . . . . . . . . . . . . . . . . 16

      E.   Defendant's Armed Robbery of Gilbert "Baka"
           SORIANO for Drugs and Money . . . . . . . . . . 16

F.    Defendant's Armed Robbery of Travis HEFFELFINGER
      for Drugs and Money .  . . . . . . . . . . . . .  17

G.    Defendant Stole Hector FERRER's Wife's 1999 Nissan
      on or about August 1, 2003 from the Pacific Marina
      Hotel . . . . . . . . . . . . . . . . . . . . . .  18

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . .  19

## TABLE OF AUTHORITIES

**CASES**                                                    **Page(s)**

Chandler v. United States, 378 F.2d 906 (9th Cir. 1967) . . .  11

Heath v. Cast, 813 F.2d 254 (9th Cir. 1987) . . . . . . . . .  11

Huddleston v. United States, 485 U.S. 681 (1988)  . . . .  11, 12

In re Winship, 397 U.S. 358 (1970) . . . . . . . . . . . . .  11

United States v. Arambula-Ruiz, 987 F.2d 599 (9th Cir. 1993)  12

United States v. Ayers, 924 F.2d 1468 (9th Cir. 1991) . . . .  11

United States v. Castro, 476 F.2d 750 (9th Cir. 1973) . . . .  11

United States v. Collins, 90 F.3d 1420 (9th Cir. 1996)  . . .  10

United States v. Daly, 974 F.2d 1215 (9th Cir. 1992)  . . . .  11

United States v. Hadley, 918 F.2d 848 (9th Cir. 1990) . . . .  12

United States v. Houser, 929 F.2d 1369 (9th Cir. 1990)  . . .  12

United States v. Mehrmanesh, 689 F.2d 822 (9th Cir. 1982) . .  11

United States v. Nadler, 698 F.2d 995 (9th Cir. 1983) . . . .  11

United States v. Ross, 886 F.2d 264 (9th Cir. 1984) . . . . .  12

United States v. Rubio-Villareal, 927 F.2d 1495
     (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . .  12

United States v. Spillone, 879 F.2d 514 (9th Cir. 1989) .  11, 12

United States v. Vizcarra-Martinez, 66 F.3d 1006
     (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . .  10

United States v. Vo, 413 F.3d 1010 (9th Cir. 2005),
     cert. denied, 126 S.Ct. 785 (2005) . . . . . . . . . .  12

I

Now comes the United States through its undersigned counsel and herein opposes Defendant Silver Galindo's, aka Daniel S. Galindo, aka Timothy Mau ("Defendant"), Motion in Limine Regarding "United States Written Notice Pursuant to Federal Rule of Evidence 404(b) Dated December 27, 2006". This Court should deny this motion for two reasons. First, said-evidence is not subject to a Rule 404(b) analysis because it is "inextricably intertwined" with the charged offenses. Second, if said-evidence is considered to be "other crimes, wrongs, or acts," it is relevant to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

I.  **BACKGROUND**

On April 25, 2007, a grand jury indicted Defendant in a Third Superceding Indictment. In this eleven count indictment[1], the grand jury charged Defendant with:

Count 1
March 11, 2004 = Felon in Possession of a Firearm and Ammunition.

Count 2
March 11, 2004 = Possession with the Intent to Distribute 5 grams or more of Methamphetamine.

Count 3
March 11, 2004 = Possession of a Firearm in furtherance of a drug trafficking crime (Count 2).

Count 4
February 29, 2004 = Felon in Possession of a Firearm and Ammunition.

---

[1] This Court is currently deciding whether to overturn Magistrate Barry M. Kurren's order severing Counts 5, 6, and 7. The government appealed the Magistrate's order on June 1, 2007.

Count 5
January 23, 2004 = Felon in Possession of a Firearm.

Count 6
January 23, 2004 = Tampering with a Person with Information About a Federal Offense.

Count 7
January 23, 2004 = Possession of a Firearm in furtherance of a Crime of Violence (Count 6).

Count 8
September 6, 2003 = Felon in Possession of a Firearm and Ammunition.

Count 9
July 31, 2003 = Felon in Possession of a Firearm.

Count 10
July 31, 2003 = Possession with the Intent to Distribute 5 grams or more of Methamphetamine.

Count 11
July 31, 2003 = Possession of a Firearm in furtherance of a drug trafficking crime (Count 10).

These eleven counts make up five incidents. They are as follows:

A. **March 11, 2004**

Counts 1, 2, and 3 involves Defendant, a convicted felon, possessing five grams or more of methamphetamine with the intent to distribute and possessing a firearm in furtherance of possessing the methamphetamine with a intent to distribute.

On March 11, 2004, Honolulu Police Department ("HPD") and Federal agents received information on the whereabouts of Defendant who was wanted for a federal and a state warrant. It was reported that Defendant was in a home located at 91-2240 Fort

2

Weaver Road B-2.  At 7:55 p.m., HPD surrounded this residence in
Ewa Beach and then ordered the occupants out of the house.

Four occupants of the residence exited.  However,
Defendant was not one of them.  With consent of the four
occupants, police entered the residence and systematically
checked each room.  When HPD Officer Tafaoa entered the bathroom
he saw a hole in the roof the size of a hand or foot next to the
attic hatch.  The officer also noticed debris in the sink
directly below the hole.  Officers entered the roof where they
located Defendant.  Defendant struggled with Officer Tafaoa and
Defendant fell through the ceiling.  Defendant was apprehended
and taken by police.

Police obtained consent from the owner of the residence
to search the premises.  In the ceiling, a few feet away from
where Officer Tafaoa first saw Defendant, he recovered from a
black jacket a loaded .9mm Smith and Wesson, 6.453 grams of
methamphetamine (92% pure = 5.887 grams), and a wallet and an ID
with Defendant's picture but Timothy Mau's name.  Additionally,
from within the residence, the police recovered two bags that
belonged to Defendant.

Search warrants[2] for these bags were obtained.  In the
Eastport backpack was *inter alia*: 28 9mm caliber rounds, a

---

[2] Mag. No. 04-0235 BMK = Concourse duffle bag
 Mag. No. 04-0236 BMK = Eastport backpack

3

digital scale, clothing, and personal items.  In the Concourse duffle bag was *inter alia*: a photo of Genevieve Avilla (Defendant's girlfriend), clothing, and personal items.

    B.   **February 29, 2004**

Count 4 involves Defendant, a convicted felon, possessing a firearm.

On February 29, 2004, DEA agents executed a search warrant at Robert Tomaszycki's ("TOMASZYCKI") residence at 62-148A Lokoea Place in Haleiwa, Hawaii.  TOMASZYCKI was a drug dealer who enlisted the help of Defendant to locate some missing drugs as well as serve as protection for TOMASZYCKI's drugs. TOMASZYCKI allowed Defendant to stay at his residence.

At the 62-148A Lokoea Place residence, agents found *inter alia*: a loaded Beretta .25 caliber semi-automatic pistol under a bed mattress in the residence.  At the foot of the bed, near where the firearm was found, agents also recovered a bag that contained inter alia: photographs of Defendant, a driver's license with Defendant's photograph but with Timothy Mau's information, and a social security card issued to "Cory J.N. Galindo."  Cooperators tied Defendant to the Beretta found at the residence.

    C.   **January 23, 2004**

Counts 5, 6, and 7 involves Defendant, a convicted felon, possessing a firearm, and using the firearm to tamper with

a person, Christopher Mabanag ("MABANAG") who had information regarding the distribution of methamphetamine.

Defendant had "offered" his "help" to Daniel Langaman ("LANGAMAN") who was a drug dealer. LANGAMAN did not want to refuse this "offer" because LANGAMAN feared Defendant given Defendant's reputation, nobody "messes" with him (Defendant) and everyone is scared of him (Defendant). LANGAMAN also heard of Defendant's reputation of "jacking" people for their drugs. Defendant told LANGAMAN that once people hear that he's (Defendant) with LANGAMAN, they aren't going to mess with LANGAMAN. On two separate occasions, Defendant asked LANGAMAN for money. LANGAMAN obliged.

MABANAG was a drug user and a drug runner for LANGAMAN. LANGAMAN and MABANAG knew each other since high school, and starting in 2003, MABANAG worked for LANGAMAN. MABANAG would receive parcels containing methamphetamine for LANGAMAN. On January 21, 2004, MABANAG received such a parcel for LANGAMAN. However, DEA and HPD intercepted this package. LANGAMAN, unsure about what to do or where to go, called Defendant. Defendant picked up LANGAMAN. LANGAMAN explained to Defendant that his parcel was intercepted and there were police at the home where the drugs were supposed to be.

Upon hearing this, Defendant called Travis Heffelinger, aka Travis Heffelfinger ("HEFFELINGER"). In mid-2003,

5

HEFFELINGER had been a victim of an armed robbery of drugs and
money by Defendant and others.  However, subsequent to this
robbery, HEFFELINGER and Defendant became associates and shared
drugs and firearm.

Defendant told HEFFELINGER to call a source to
determine MABANAG's custody status.  HEFFELINGER found out that
the MABANAG was in custody for outstanding warrants, not on drugs
charges.  Defendant suspected that MABANAG was working for the
authorities, which MABANAG was.  Defendant instructed HEFFELINGER
to bail MABANAG out and to make sure he (HEFFELINGER) was not
being followed by authorities when they left the police station.
HEFFELINGER and MABANAG met up with Defendant and LANGAMAN.  They
all got into Defendant's truck.  Defendant was in the back with
MABANAG, LANGAMAN was driving, and HEFFELINGER was the front seat
passenger.

Defendant tried to get MABANAG to admit that he was
working with authorities.  Defendant zip-tied MABANAG and put a
bag over his head.  DEFENDANT assaulted and threatened MABANAG.
While punching and slapping MABANAG, Defendant yelled, "I going
shoot you . . . you lying."  Defendant struck MABANAG in the head
with the firearm and also put the firearm to MABANAG's head.
Defendant also tried to cut off MABANAG's finger.  Defendant
finally relented and released MABANAG, but before he did,
Defendant told MABANAG to call the "Feds" and lie by blaming

6

someone else for the drugs.

**D.**   **September 6, 2003**

Count 8 involves Defendant, a convicted felon, possessing a firearm and ammunition.

On September 6, 2003, at approximately 5:00 a.m., police responded to the Golden Coin Bakery on North King Street. It was reported that a employee of the Golden Coin had observed a large dark gray car with only its parking lights on pull into the parking lot at approximately 3:30 a.m.  At about 5:00 a.m. Police were called because the employees were concerned about the person that was still sleeping in the car.

When police arrived, they observed Defendant sleeping in the driver's seat of a Lincoln.  Officers ran a license plate check on the Lincoln.  It came back showing the car as being stolen.  Officers approached the stolen car with guns drawn.

They awoke Defendant who did not immediately comply with requests to open the car door and exit.  Defendant took the keys from his lap and attempted to place them in the ignition. However, the keys dropped to the floor and Defendant was unable to start the car.  After a few seconds, Defendant finally complied and he was removed from the car and handcuffed.

While securing the Lincoln, police observed a firearm under the center arm rest of the car.  It was .45 semi-automatic Colt pistol loaded with 7 rounds of ammunition.

Police contacted the registered owner of the Lincoln, Mr. Delmonte.  Mr. Delmonte had gone on vacation, and when he returned, he noticed the Lincoln and its spare key was missing from his home.  Mr. Delmonte did not give Defendant permission to use the Lincoln, nor was the firearm found in the Lincoln his.

Using the serial number of the .45 semi-automatic colt, Police traced the firearm back to Mr. Huber as the last known person with contact with firearm.  Mr. Huber had been storing the gun at his parents home and when he went to retrieve it, it was missing.  Mr. Huber filed a police report documenting this on May 11, 2000.  Mr. Huber did not know Defendant, nor did Mr. Huber give Defendant have permission to possess it.

**E.    July 31, 2003**

Counts 9, 10, and 11 involves Defendant, a convicted felon, possessing five grams or more of methamphetamine with the intent to distribute and possessing a firearm, and using the firearm in furtherance of possessing the methamphetamine with an intent to distribute.

On July 31, 2003, Defendant, along with E.C., robbed Hector Ferrer ("FERRER") at gunpoint for 2 ounces of methamphetamine, cash, and the keys to FERRER's wife's 1999 Nissan Maxim.  On that evening, prior to the armed robbery, FERRER got a call from a D.T.  This is a girl that FERRER had partied with before.  She called and told him that she has just

8

gotten into a fight with her boyfriend, E.C. D.T. told FERRER to pick her up and that she need a place to stay. FERRER picked D.T. at her Kalihi residence near the 7-11 on Dillingham Blvd. in FERRER's wife 1999 Nissian Maxima, and returned to the Pacific Marina Hotel near the airport.

At the Pacific Marina Hotel, the two smoked methamphetamine or "ice". FERRER, trying to impress D.T., showed her the 2 ounces of ice he had. FERRER notice D.T. playing on her phone but did not think anything of it. Ten to fifteen minutes later, he heard a knock at the door and saw E.C., D.T.'s boyfriend. D.T. told FERRER to open the door at which time Defendant barged into the room brandishing a firearm and pointed it at FERRER. Defendant tied FERRER up and took FERRER's fanny pack that contained cash, approximately two ounces of ice, and the keys to FERRER's wife's 1999 Maxima.

After this armed robbery, FERRER was able to free himself only to see his wife's 1999 Maxima speeding away. FERRER called his wife and told her to report the car stolen. The car was reported stolen to HPD on evening of August 1, 2003.

April 30, 2004, both Defendant and FERRER were in federal custody and held at the Federal Detention Center ("FDC"). Both had court appearances and were awaiting transport from the FDC. Defendant approached FERRER and began talking to FERRER. Defendant said, "you from Salt Lake." Defendant also told FERRER

9

that he was an easy target, that it was not his plan - it was the other guys plan, and that he was sorry.  Defendant also added that if he wanted to rob FERRER, he would have gone to his house.  Defendant also stated that he knew FERRER's wife worked at Leahi hospital.

## II.  STATEMENT OF THE LAW

### A.  Statement of Law Regarding Admissibility of Evidence That is "Inextricably Intertwined."

Evidence of "other acts" is not subject to Rule 404(b) analysis if it is "inextricably intertwined" with the charged offense.  See United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012 (9th Cir. 1995).  There are two categories of evidence that may be considered "inextricably intertwined."  First, evidence of prior acts may be admitted if the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge."  Id.  Second, prior act evidence may be admitted "when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."  Id. at 1012-13.

This "inextricably intertwined" exception to Rule 4040(b) "is most often applied in felon-in-possession cases because of the difficulty that the prosecution would encounter in proving that the defendant possessed a gun and in rebutting his proffered defense without relating the facts surrounding the commission of the crime."  United States v. Collins, 90 F.3d

10

1420, 1429-1430 (9th Cir. 1996).  "The jury cannot be expected to make its decision in a void-without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." United States v. Daly, 974 F.2d 1215, 1216 (9th Cir. 1992) (quoting United States v. Moore, 735 F.2d 289, 292 (8th Cir. 1984)).

**B.    Statement of Law Regarding Admissibility of 404(b)evidence**

Where intent or knowledge is an element of the crime charged and is an essential issue in dispute, probative evidence of such intent or knowledge is generally admissible, even if it is also evidence of some other wrong or crime.  United States v. Nadler, 698 F.2d 995, 1000 (9th Cir. 1983); Chandler v. United States, 378 F.2d 906, 906-908 (9th Cir. 1967); United States v. Castro, 476 F.2d 750, 753-754 (9th Cir. 1973).  The government must prove every element of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970).  This burden is not relieved by a defendant's promise to forgo argument on an issue. United States v. Spillone, 879 F.2d 514, 518 (9th Cir. 1989). The Ninth Circuit has repeatedly construed Rule 404(b) as being a rule of inclusion.  United States v. Ayers, 924 F.2d 1468, 1472 (9th Cir. 1991); Heath v. Cast, 813 F.2d 254, 259 (9th Cir. 1987).  So long as the evidence is offered for a proper purpose, such as to prove intent, the district court is accorded wide discretion in deciding whether to admit the evidence and the test

11

for admissibility is one of relevance.  <u>Huddleston v. United States</u>, 485 U.S. 681, 687-88 (1988).  Similar Act Evidence should thus be admitted under rule 404(b) where:

(1) sufficient evidence exists for the jury to find the defendant committed the similar act,

(2) the similar act is introduced to prove a material issue at trial,

(3) the similar act is not too remote in time[3], and

(4) if admitted to prove intent, the other act must be similar to the charged offense.  <u>United States v. Arambula-Ruiz</u>, 987 F.2d 599, 603 (9th Cir. 1993); <u>United States v. Houser</u>, 929 F.2d 1369, 1373 (9th Cir. 1990); <u>Spillone</u>, 879 F.2d at 518-20.  A district court need only make a "threshold inquiry" as to whether the proposed similar act evidence is probative of a material issue, in order to admit such evidence.[4]

---

[3] The Ninth Circuit has refused to adopt a bright line rule regarding remoteness, holding that a conviction more than ten years earlier was not too remote.  <u>Spillone</u>, 879 F.2d at 519; <u>United States v. Ross</u>, 886 F.2d 264, 267 (9th Cir. 1984) (13 year old conviction), <u>United States v. Hadley</u>, 918 F.2d 848, 851 (9th Cir. 1990).

[4] Previous Ninth Circuit caselaw required a showing of "clear and convincing" proof that a defendant committed the similar act. However, the Supreme Court's intervening decision in <u>Huddleston</u>, 485 U.S. at 685 required only a finding by the jury that a defendant committed the similar act.  <u>United States v. Rubio-Villareal</u>, 927 F.2d 1495, 1503 n.8 (9th Cir. 1991).  <u>See also</u> <u>Spillone</u>, <u>supra</u>, 879 F.2d at 518 n.1.  A prior conviction is certainly sufficient to establish that a defendant committed the similar act.  <u>United States v. Vo</u>, 413 F.3d 1010, 1018 (9th Cir. 2005), <u>cert. denied</u>, 126 S.Ct. 785 (2005).

III. **DISCUSSION**

        The United States has an affirmative obligation to
prove knowledge and intent as elements of the offenses charged.
Additionally, it is likely that the defense will argue lack of
knowledge and intent with regard to the possession of firearms
and drugs.

        Accordingly, the government intends to use the evidence
from its Written Notice Pursuant to Federal Rule of Evidence
404(b) affirmatively in its case-in-chief to prove the elements
of the charge crimes as well as defendants' knowledge, intent,
and absence of mistake or accident.  Some of the evidence
Defendant seeks to exclude is "inextricably intertwined" with the
evidence supporting the charged criminal conduct and provides the
context in which the charged criminal conduct occurred.  Some of
the evidence Defendant seeks to exclude, even when applying Rule
404(b) of the Federal Rules of Evidence, is admissible.

        Defendant, in his motion in limine, only seeks to
excluded certain evidence as documented in the United States
Written Notice Pursuant to Federal Rule of Evidence 404(b) dated
December 27, 2006.  The following discussion will analyze the
admissibility of the evidence Defendant seeks to exclude.

    A.    **Defendant's Involvement with Robert TOMASZYCKI's Drug
          Distribution Including but Not Limited to How and Why
          TOMASZYCKI Involved Defendant in His Drug Distribution.**

          Evidence that Defendant was involved with TOMASZYCKI's

                                   13

drug distribution as protection is "inextricably intertwined" with Defendant's possession of a loaded Beretta .25 caliber semi-automatic pistol at TOMASZYCKI's residence at 62-148A Lokoea Place because it "constitutes a part of the transaction that serves as the basis for the criminal charge."  Such evidence establishes Defendant's presence at TOMASZYCKI's residence and Defendant's possession of the firearm because it explains why Defendant would be staying at TOMASZYCKI's residence and why Defendant possessed the firearm.

**B.    Defendant's Possession and Use of Firearms on Occasions Other than Those Named in the Indictment.**

Evidence that Defendant possessed firearms on occasions other than charged in the indictment is relevant to establish Defendant's use and possession of firearms in the charged counts. Such evidence includes: 1) Defendant's conviction in the State of Hawaii Cr. No. 94-1299 on January 11, 1995, for Possession of a Firearm by a Person Convicted of Certain Crimes and Place to Keep Firearm Loaded with Ammunition; 2) Defendant possessing three firearms on February 27, 2004 at TOMASZYCKI's residence at 62-148A Lokoea Place; and 3) Defendant possessing firearms in 2004 before Defendant's arrest.

Given the firearms in Counts 1, 4, and 8 were not found on Defendant's person but rather only in Defendant's close proximity, said evidence is necessary to establish possession by Defendant.  Said-evidence is similar act evidence that should be

14

admitted under rule 404(b).  Said-evidence is sufficient for the

jury to find the defendant committed the similar act.  Said-

evidence are close in time and similar to the charge crimes.

**C.    Defendant's Possession [ ] of Drugs [in Distributional**
**Amounts] on Occasions Other than Those Named in the**
**Indictment.**

Evidence that Defendant possessed drugs in

distributional amounts on occasions other than charged in the

indictment is relevant to establish Defendant's possession of

drugs with the intent to distribute in the charged counts.

Such evidence includes: 1) Defendant's possession of stolen drugs

that Defendant would give HEFFELINGER for his personal use in mid

to late 2003; 2) Defendant's possession of an ounce of ice

"fronted" to him by LANGAMAN in late 2003; and 3) Defendant's

purchase of four ounces of ice for $5,000.00 from LANGAMAN in

late 2003 or early 2004.

The Ninth Circuit has consistently held that evidence

of a defendant's prior possession or sale of narcotics is

relevant under Rule 404(b) to issues of intent, knowledge,

motive, opportunity, and absence of mistake or accident in

prosecutions for possession of, importation of, and intent to

distribute narcotics.  <u>United States v. Mehrmanesh</u>, 689 F.2d 822,

832 (9th Cir. 1982). When analyzing the similarity of prior drug

crimes under Fed. R. Evid. 404(b), the type of activity

undertaken, rather than the precise identity of the drugs, is the

15

relevant factor. See <u>United States v. Vizcarra-Martinez</u>, 66 F.3d 1006, 1015 (9th Cir. 1995).

Given the government must prove that Defendant possessed with the intent to distribute the methamphetamine charged in Counts 2 and 10, said evidence is necessary to establish Defendant's intent. Said-evidence is similar act evidence that should be admitted under rule 404(b). Said-evidence is sufficient for the jury to find the defendant committed the similar act. Said-evidence are close in time and similar to the charge crimes.

### D. Defendant's Involvement with Dan LANGAMAN's Drug Distribution Including but Not Limited to How and Why <u>LANGAMAN Involved Defendant in His Drug Distribution.</u>

Evidence that Defendant was involved with LANGAMAN's drug distribution as protection establishes Defendant's intent with tampering with MABANAG. It also establishes Defendant's use and possession of firearms. Accordingly, Defendant's involvement with LANGAMAN as protection is "inextricably intertwined" with the charged offenses in Count 5, 6, and 7, as it "constitutes a part of the transaction that serves as the basis for the criminal charge". If the jury is not informed of Defendant's relationship with LANGAMAN, it will not have a proper context from which to examine the charged offenses. Without this information the government will not be able to provide " . . . a coherent and comprehensible story regarding the commission of the crime."

16

### E.    Defendant's Armed Robbery of Gilbert "Baka" SORIANO for Drugs and Money.

The government will not seek to introduce evidence of this in its case-in-chief.  However, if Defendant make this evidence relevant or otherwise opens the door to this evidence, government will seek to introduce it.

### F.    Defendant's Armed Robbery of Travis HEFFELFINGER for Drugs and Money.

Evidence of Defendant's armed robbery of HEFFELINGER for drugs and money in mid-2003 is relevant to establish HEFFELINGER's state of mind in interacting with Defendant.  It also gives context to HEFFELINGER's involvement with Defendant's tampering with MABANAG.  Accordingly, Defendant's armed robbery of Travis HEFFELINGER for drugs and money is "inextricably intertwined" with the charged offenses in Count 5, 6, and 7, as it "constitutes a part of the transaction that serves as the basis for the criminal charge".  If the jury is not informed of Defendant's relationship with HEFFELINGER it will not have a proper context from which to examine the charged offenses. Without this information, the government will not be able to provide " . . . a coherent and comprehensible story regarding the commission of the crime." i.e. why HEFFELINGER was present during Defendant's tampering with MABANAG.

Additionally, given the government must prove that Defendant possessed with the intent to distribute the

17

methamphetamine charged in Counts 2 and 10, said evidence is necessary to establish Defendant's intent.  Said-evidence is similar act evidence that should be admitted under rule 404(b). Said-evidence is sufficient for the jury to find the defendant committed the similar act.  Said-evidence are close in time and similar to the charge crimes.

### G. Defendant Stole Hector FERRER's wife's 1999 Nissan on or about <u>August 1, 2003 from the Pacific Marina Hotel.</u>

This evidence is "inextricably intertwined" with the armed robbery of FERRER.  Defendant's theft of FERRER's wife's 1999 Nissan "constitutes a part of the transaction that serves as the basis for the criminal charge".  The theft of the vehicle was part and parcel of the armed robbery which additionally netted FERRER's drugs and money.

Additionally, said-evidence give context to other evidence which corroborates Defendant's armed robbery.  The theft of the vehicle will corroborate FERRER's testimony at trial. Given FERRER will be the only government witness testifying about the armed robbery, it is vital that the government introduce corroboration.

## V. <u>CONCLUSION</u>

The United States submits that the Court should exercise its discretion and admit the proffered evidence as inextricably intertwined with the charged crimes or alternatively

under Rule 404(b) with a limiting instruction.[5]

DATED: June 25, 2007, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By /s/ Darren W.K. Ching
   DARREN W. K. CHING
   Assistant U.S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

[5]The court can give the Ninth Circuit Manual of Model
Criminal Jury Instructions, Instruction No. 3.10.

## CERTIFICATE OF SERVICE

I hereby certify that on the date and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at his last known address:

Served by Facsimile and First Class mail:

JACK SCHWEIGERT, ESQ.
The Lawyers Building
550 Halekauwila, Room 309
Honolulu, HI 96813

Attorney for Defendant

DATED: June 25, 2007, at Honolulu, Hawaii.

 /s/ Darren W.K. Ching