EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

DARREN W.K. CHING    #6903
Assistant U.S. Attorney
PJKK Federal Bldg., Room 6-100
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: Darren.Ching@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-00053 DAE |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S OPPOSITION TO |
| | ) | DEFENDANT'S SUPERCEDING MOTION |
| vs. | ) | IN LIMINE REGARDING "UNITED |
| | ) | STATES WRITTEN NOTICE PURSUANT |
| | ) | TO FEDERAL RULE OF EVIDENCE |
| SILVER JOSE GALINDO, | ) | 404(b) DATED DECEMBER 27, |
| aka Daniel S. Galindo, | ) | 2006" FILED ON MARCH 12, 2008; |
| aka Timothy Mau, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| Defendant. | ) | |
| | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
SUPERCEDING MOTION IN LIMINE REGARDING "UNITED
STATES WRITTEN NOTICE PURSUANT TO FEDERAL RULE OF
EVIDENCE 404(b) DATED DECEMBER 27, 2006" FILED ON MARCH 12, 2008

TABLE OF CONTENTS


TABLE OF AUTHORITIES

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . I

I.    BACKGROUND. . . . . . . . . . . . . . . . . . . . . . 1

      A.    March 11, 2004. . . . . . . . . . . . . . . . . 2

      B.    February 29, 2004.. . . . . . . . . . . . . . . 4

      C.    January 23, 2004 . . . . . . . . . . . . . . . 5

      D.    September 6, 2003 . . . . . . . . . . . . . . . 7

      E.    July 31, 2003.. . . . . . . . . . . . . . . . . 8

II.   STATEMENT OF THE LAW. . . . . . . . . . . . . . . . . 10

      A.    Statement of Law Regarding Admissibility of
            Evidence That is "Inextricably Intertwined."
            . . . . . . . . . . . . . . . . . . . . . . . 10

      B.    Statement of Law Regarding Admissibility of
            404(b)evidence. . . . . . . . . . . . . . . . 11

III.  DISCUSSION. . . . . . . . . . . . . . . . . . . . . . 13

      A.    Defendant's Involvement with Robert TOMASZYCKI's
            Drug Distribution Including but Not Limited to How
            and Why TOMASZYCKI Involved Defendant in His Drug
            Distribution. . . . . . . . . . . . . . . . . 14

      B.    Defendant's Possession and Use of Firearms on Occasions
            Other than Those Named in the Indictment. . . . . . 15

      C.    Defendant's Possession and use of Drugs on Occasions
            Other than Those Named in the Indictment. . . . . . 22

      D.    Defendant's Involvement with Dan LANGAMAN's Drug
            Distribution. . . . . . . . . . . . . . . . . 26

      E.    Defendant's Armed Robbery of Gilbert "Baka"
            SORIANO, Travis Heffelfinger, Brian Higa, Deon
            Valencia, Craig France or any other person not
            charged in the Third Superceding Indictment.. . . . 26

F.   Defendant's holding of drugs and/or weapons or giving or drug or weapons to Travis HEFFELFINGER . . . . . . . . . . . . . . . . . . . . . . . . 27

G.   Defendant Stole Hector FERRER's wife's 1999 Nissan on or about August 1, 2003 from the Pacific Marina Hotel. . . . . . . . . . . . . . . . . . . . . . 27

H.   Items recovered at 91-2240 Fort Weaver Road on March 11, 2004. . . . . . . . . . . . . . . . . . . . 27

I.   Items recovered ("two hooded masks") from 62-148A Lokokea Place, Haleiwa . . . . . . . . . . . . . 28

J.   Defendant's criminal history other than Stipulation that Defendant was a convicted felon prior of July 31, 2003 . . . . . . . . . . . . . . . . . . . . . 29

K.   Any reference to Defendant being on Crime Stoppers Most Wanted List. . . . . . . . . . . . . . . . . 29

L.   Any Mask seized as evidence from either the Haleiwa property or the Ewa Beach property . . . . . . . . 30

V. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES

**CASES**                                                               **Page(s)**

Chandler v. United States, 378 F.2d 906 (9th Cir. 1967).. . .  11

Heath v. Cast, 813 F.2d 254 (9th Cir. 1987).. . . . . . . . .  12

Huddleston v. United States, 485 U.S. 681 (1988). . . . .  12, 13

In re Winship, 397 U.S. 358 (1970). . . . . . . . . . . . . .  11

United States v. Arambula-Ruiz, 987 F.2d 599 (9th Cir. 1993).  12

United States v. Ayers, 924 F.2d 1468 (9th Cir. 1991).. . . .  12

United States v. Cassell, 292 F.3d 788, 795 (D.C. Cir. 2002).  18

United States v. Castro, 476 F.2d 750 (9th Cir. 1973).. . . .  11

United States v. Collins, 90 F.3d 1420 (9th Cir. 1996). . . .  11

United States v. Curtin, 489 F.3d 935, 944 (9th Cir. 2007). .  13

United States v. Daly, 974 F.2d 1215 (9th Cir. 1992). . . . .  11

United States v. Estrada, 453 F.3d 1208 (9th Cir. 2006).. . .  16

United States v. Fuller, 453 F.3d 274, (5th Cir. 2006) .. . .  17

United States v. Goss, 2007 WL 4165460 (9th Cir. 2007). . . .  16

United States v. Hadley, 918 F.2d 848 (9th Cir. 1990).. . . .  12

United States v. Houser, 929 F.2d 1369 (9th Cir. 1990). . . .  12

United States v. Jernigan, 341 F.3d 1273, 1281
      (11th Cir. 2003).. . . . . . . . . . . . . . . . . . . .  18

United States v. Mehrmanesh, 689 F.2d 822 (9th Cir. 1982).. .  23

United States v. Moore, 735 F.2d 289, 292 (8th Cir. 1984) . .  11

United States v. Moorehead, 57 F.3d 875 (9th Cir. 1995).. . .  21

United States v. Moran, 503 F.3d 1135, (10th Cir. 2007).. . .  17

i

United States v. Nadler, 698 F.2d 995 (9th Cir. 1983). . . . . .  11

United States v. Rendon-Duarte, 490 F.3d 1142, 1145
      (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . .  17

United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002). .  13

United States v. Ross, 886 F.2d 264 (9th Cir. 1984). . . . . .  12

United States v. Rubio-Villareal, 927 F.2d 1495
      (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . .  13

United States v. Spillone, 879 F.2d 514 (9th Cir. 1989). .  11, 12

United States v. Strong, 415 F.3d 902 (8th Cir. 2005). . . . .  17

United States v. Vizcarra-Martinez, 66 F.3d 1006
      (9th Cir. 1995). . . . . . . . . . . . . . . . . .  10, 23

United States v. Vo, 413 F.3d 1010 (9th Cir. 2005),
      cert. denied, 126 S.Ct. 785 (2005). . . . . . . . .  13, 16

United States v. Walker, 470 F.3d 1271, 1274 (8th Cir. 2006) .  18

STATUTES AND RULES

21 U.S.C. § 841 . . . . . . . . . . . . . . . . . . . . . . .  26

Hawaii Revised Statutes § 134-6. . . . . . . . . . . . . . . .  19

Hawaii Revised Statutes § 286-102. . . . . . . . . . . . . . .  19

Hawaii Revised Statutes § 708-836. . . . . . . . . . . . . . .  19

Hawaii Revised Statutes § 712-1243. . . . . . . . . . . . . .  19

Now comes the United States through its undersigned counsel and herein opposes Defendant Silver Galindo's, aka Daniel S. Galindo, aka Timothy Mau ("Defendant"), Superceding Motion in Limine Regarding "United States Written Notice Pursuant to Federal Rule of Evidence 404(b) Dated December 27, 2006" filed by Defendant on March 12, 2008. This opposition filed by the government supplements Government's Opposition to Defendant's Motion in Limine Regarding "United States Written Notice Pursuant to Federal Rule of Evidence 404(b) Dated December 27, 2006" filed on June 25, 2007.

This Court should deny Defendant's motion for two reasons. First, said-evidence is not subject to a Rule 404(b) analysis because it is "inextricably intertwined" with the charged offenses. Second, if said-evidence is considered to be "other crimes, wrongs, or acts," it is relevant to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

I.   **BACKGROUND**

On April 25, 2007, a grand jury indicted Defendant in a Third Superceding Indictment. In this eleven count indictment[1], the grand jury charged Defendant with:

Count 1
March 11, 2004 = Felon in Possession of a Firearm and Ammunition.

---

[1] On August 6, 2007, this Court affirmed Magistrate Barry M. Kurren's order severing Counts 5, 6, and 7.

<u>Count 2</u>
March 11, 2004 = Possession with the Intent to Distribute 5 grams
or more of Methamphetamine.

<u>Count 3</u>
March 11, 2004 = Possession of a Firearm in furtherance of a drug
trafficking crime (Count 2).

<u>Count 4</u>
February 29, 2004 = Felon in Possession of a Firearm and
Ammunition.

<u>Count 5</u>
January 23, 2004 = Felon in Possession of a Firearm.

<u>Count 6</u>
January 23, 2004 = Tampering with a Person with Information About
a Federal Offense.

<u>Count 7</u>
January 23, 2004 = Possession of a Firearm in furtherance of a
Crime of Violence (Count 6).

<u>Count 8</u>
September 6, 2003 = Felon in Possession of a Firearm and
Ammunition.

<u>Count 9</u>
July 31, 2003 = Felon in Possession of a Firearm.

<u>Count 10</u>
July 31, 2003 = Possession with the Intent to Distribute 5 grams
or more of Methamphetamine.

<u>Count 11</u>
July 31, 2003 = Possession of a Firearm in furtherance of a drug
trafficking crime (Count 10).

These eleven counts make up five incidents.  They are
as follows:

**A.   March 11, 2004**

Counts 1, 2, and 3 involves Defendant, a convicted
felon, possessing five grams or more of methamphetamine with the

2

intent to distribute and possessing a firearm in furtherance of possessing the methamphetamine with an intent to distribute.

On March 11, 2004, Honolulu Police Department ("HPD") officers and Federal agents received information on the whereabouts of Defendant who was wanted for a federal and a state warrant. It was reported that Defendant was in an Ewa Beach home located at 91-2240 Fort Weaver Road B-2.

At 7:55 p.m., HPD officers surrounded the residence and then ordered the occupants out. Four occupants of the residence exited. However, Defendant was not one of them. With the consent of the four occupants, police entered the residence and systematically checked each room. When HPD Officer Tafaoa entered the bathroom, he saw a hole in the roof the size of a hand or foot next to the attic hatch. The officer also noticed debris in the sink directly below the hole. Officers entered the roof where they located Defendant. Defendant struggled with Officer Tafaoa and Defendant fell through the ceiling. Defendant was apprehended and taken by police.

In the ceiling, a few feet away from where Officer Tafaoa first saw Defendant, police recovered from a black jacket a loaded 9mm Smith and Wesson, 6.453 grams of methamphetamine (92% pure = 5.887 grams), and a wallet and an ID with Defendant's picture but with Timothy Mau's name. From within the residence, police also recovered two bags that belonged to Defendant.

Search warrants[2] for these bags were obtained.  In the Eastport backpack was *inter alia*: 28 9mm caliber rounds, a digital scale (commonly used to weigh illegal narcotics), clothing, and personal items.  In the Concourse duffle bag was *inter alia*: a photo of Genevieve Avilla (Defendant's girlfriend), clothing, and personal items.

**B.    February 29, 2004**

Count 4 involves Defendant, a convicted felon, possessing a firearm.

On February 29, 2004, DEA agents executed a search warrant at Robert Tomaszycki's ("TOMASZYCKI") residence at 62-148A Lokoea Place in Haleiwa, Hawaii.  TOMASZYCKI was a drug dealer who enlisted the help of Defendant to locate some missing drugs as well as serve as protection for TOMASZYCKI's drugs. TOMASZYCKI allowed Defendant to stay at his residence.

At the 62-148A Lokoea Place residence, agents found *inter alia*: a loaded Beretta .25 caliber semiautomatic pistol under a bed mattress in the master bedroom of the residence.  At the foot of the bed, near where the firearm was found, agents also recovered a bag that contained *inter alia*: photographs of Defendant, a driver's license with Defendant's photograph but with Timothy Mau's information, and a social security card issued to

---

[2] Mag. No. 04-0235 BMK = Concourse duffle bag
 Mag. No. 04-0236 BMK = Eastport backpack

4

"Cory J.N. Galindo."  Cooperators stated the loaded Beretta .25 caliber semiautomatic pistol found at the residence belonged to Defendant.

### C.    January 23, 2004

Counts 5, 6, and 7 involves Defendant, a convicted felon, possessing a firearm, and using the firearm to tamper with a person, Christopher Mabanag ("MABANAG") who had information regarding the distribution of methamphetamine.

Defendant had "offered" his "help" to Daniel Langaman ("LANGAMAN") who was a drug dealer.  Given Defendant's reputation, nobody "messes" with Defendant and everyone is scared of Defendant, LANGAMAN did not want to refuse this "offer" because LANGAMAN feared Defendant.  LANGAMAN also heard of Defendant's reputation of "jacking" people for their drugs. Defendant told LANGAMAN that once people hear that he's (Defendant) with LANGAMAN, they aren't going to mess with LANGAMAN.  On two separate occasions, Defendant asked LANGAMAN for money.  LANGAMAN obliged.

MABANAG was a drug user and a drug runner for LANGAMAN. LANGAMAN and MABANAG knew each other since high school, and starting in 2003, MABANAG worked for LANGAMAN.  MABANAG would receive parcels containing methamphetamine for LANGAMAN.  On January 21, 2004, MABANAG received such a parcel for LANGAMAN. However, DEA and HPD intercepted this package.  LANGAMAN, unsure

about what to do or where to go, called Defendant.  Defendant picked up LANGAMAN.  LANGAMAN explained to Defendant that his parcel was intercepted and there were police at the home where the drugs were supposed to be.

Upon hearing this, Defendant called Travis Heffelinger, aka Travis Heffelfinger ("HEFFELFINGER").  In mid-2003, HEFFELINGER had been a victim of an armed robbery of drugs and money by Defendant and others.  However, subsequent to this robbery, HEFFELFINGER and Defendant became associates and shared drugs and firearms.

Defendant told HEFFELFINGER to call a source to determine MABANAG's custody status.  HEFFELFINGER found out that MABANAG was in custody for outstanding warrants, not on drugs charges.  Defendant suspected that MABANAG was working for the authorities, which MABANAG was.  Defendant instructed HEFFELFINGER to bail MABANAG out and to make sure he (HEFFELFINGER) was not being followed by authorities when they left the police station.  HEFFELFINGER and MABANAG met up with Defendant and LANGAMAN.  They all got into Defendant's truck. Defendant was in the back with MABANAG, LANGAMAN was driving, and HEFFELFINGER was the front seat passenger.

Defendant tried to get MABANAG to admit that he was working with authorities.  Defendant zip-tied MABANAG and put a bag over his head.  Defendant assaulted and threatened MABANAG.

6

While punching and slapping MABANAG, Defendant yelled, "I going shoot you . . . you lying."  Defendant struck MABANAG in the head with the firearm and put the firearm to MABANAG's head. Defendant also tried to cut off MABANAG's finger.  Defendant finally relented and released MABANAG, but before he did, Defendant told MABANAG to call the "Feds" and lie by blaming someone else for the drugs.

**D.    September 6, 2003**

Count 8 involves Defendant, a convicted felon, possessing a firearm and ammunition.

On September 6, 2003, at approximately 5:00 a.m., police responded to the Golden Coin Bakery on North King Street. It was reported that an employee of the Golden Coin had observed a large dark gray car with only its parking lights on, pull into the parking lot at approximately 3:30 a.m.  Police were called because the employees were concerned about the person that was still sleeping in the car.

When police arrived, they observed Defendant sleeping in the driver's seat of a Lincoln.  Officers ran a license plate check on the Lincoln.  It came back showing the car as being stolen.  Officers approached the stolen car with guns drawn. They awoke Defendant who did not immediately comply with requests to open the car door and exit.  Defendant took the keys from his lap and attempted to place them in the ignition.  However, the

keys dropped to the floor and Defendant was unable to start the car.  After a few seconds, Defendant finally complied and he was removed from the car and handcuffed.

While securing the Lincoln, police observed a firearm under the center arm rest of the car.  It was a .45 semiautomatic Colt pistol loaded with seven rounds of ammunition.

Police contacted the registered owner of the Lincoln, Mr. Delmonte.  Mr. Delmonte had gone on vacation, and when he returned, he noticed the Lincoln and its spare key were missing from his home.  Mr. Delmonte did not give Defendant permission to use the Lincoln, nor was the firearm found in the Lincoln his.

Using the serial number of the .45 semiautomatic Colt, police traced the firearm back to Mr. Huber as the last known person with contact with the firearm.  Mr. Huber had been storing the gun at his parent's home and when he went to retrieve it, it was missing.  Mr. Huber filed a police report documenting this on May 11, 2000.  Mr. Huber did not know Defendant, nor did Mr. Huber give Defendant permission to possess it.

**E.  July 31, 2003**

Counts 9, 10, and 11 involves Defendant, a convicted felon, possessing five grams or more of methamphetamine with the intent to distribute and possessing a firearm, and using the firearm in furtherance of possessing the methamphetamine with an intent to distribute.

8

On July 31, 2003, Defendant, along with E.C., robbed Hector Ferrer ("FERRER") at gunpoint for 2 ounces of methamphetamine, cash, and the keys to FERRER's wife's 1999 Nissan Maxim.  On that evening, prior to the armed robbery, FERRER got a call from a D.T.  This is a girl that FERRER had partied with before.  She called and told him that she has just gotten into a fight with her boyfriend, E.C.  D.T. told FERRER to pick her up and that she needed a place to stay.  FERRER picked D.T. at her Kalihi residence near the 7-11 on Dillingham Boulevard in FERRER's wife's 1999 Nissian Maxima, and returned to the Pacific Marina Inn near the airport.

At the Pacific Marina Inn, the two smoked methamphetamine or "ice."  FERRER, trying to impress D.T., showed her the 2 ounces of ice he had.  FERRER noticed D.T. playing on her phone but did not think anything of it.  Ten to fifteen minutes later, he heard a knock at the door and saw E.C., D.T.'s boyfriend.  D.T. told FERRER to open the door at which time Defendant barged into the room brandishing a firearm and pointed it at FERRER.  Defendant tied FERRER up and took FERRER's fanny pack that contained cash, approximately two ounces of ice, and the keys to FERRER's wife's 1999 Maxima.

After this armed robbery, FERRER was able to free himself only to see his wife's 1999 Maxima speeding away.  FERRER called his wife and told her to report the car stolen.  The car

9

was reported stolen to HPD on the evening of August 1, 2003.

On April 30, 2004, both Defendant and FERRER were in federal custody at the Federal Detention Center ("FDC").  Both had court appearances and were awaiting transport from the FDC. Defendant approached FERRER and began talking to FERRER. Defendant said, "you from Salt Lake."  Defendant also told FERRER that he was an easy target, that it was not his plan - it was the other guys plan, and that he was sorry.  Defendant also added that if he wanted to rob FERRER, he would have gone to his house. Defendant also stated that he knew FERRER's wife worked at Leahi hospital.

## II. STATEMENT OF THE LAW

### A. Statement of Law Regarding Admissibility of Evidence That is "Inextricably Intertwined."

Evidence of "other acts" is not subject to Rule 404(b) analysis if it is "inextricably intertwined" with the charged offense.  See United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012 (9th Cir. 1995).  There are two categories of evidence that may be considered "inextricably intertwined."  First, evidence of prior acts may be admitted if the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge." Id.  Second, prior act evidence may be admitted "when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." Id. at 1012-13.

10

This "inextricably intertwined" exception to Rule 4040(b) "is most often applied in felon-in-possession cases because of the difficulty that the prosecution would encounter in proving that the defendant possessed a gun and in rebutting his proffered defense without relating the facts surrounding the commission of the crime." United States v. Collins, 90 F.3d 1420, 1429-1430 (9th Cir. 1996). "The jury cannot be expected to make its decision in a void-without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." United States v. Daly, 974 F.2d 1215, 1216 (9th Cir. 1992) (quoting United States v. Moore, 735 F.2d 289, 292 (8th Cir. 1984)).

## B.    Statement of Law Regarding Admissibility of 404(b) evidence

Where intent or knowledge is an element of the crime charged and is an essential issue in dispute, probative evidence of such intent or knowledge is generally admissible, even if it is also evidence of some other wrong or crime. United States v. Nadler, 698 F.2d 995, 1000 (9th Cir. 1983); Chandler v. United States, 378 F.2d 906, 906-908 (9th Cir. 1967); United States v. Castro, 476 F.2d 750, 753-754 (9th Cir. 1973). The government must prove every element of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). This burden is not relieved by a defendant's promise to forgo argument on an issue. United States v. Spillone, 879 F.2d 514, 518 (9th Cir. 1989).

11

The Ninth Circuit has repeatedly construed Rule 404(b) as being a rule of inclusion. <u>United States v. Ayers</u>, 924 F.2d 1468, 1472 (9th Cir. 1991); <u>Heath v. Cast</u>, 813 F.2d 254, 259 (9th Cir. 1987). So long as the evidence is offered for a proper purpose, such as to prove intent, the district court is accorded wide discretion in deciding whether to admit the evidence and the test for admissibility is one of relevance. <u>Huddleston v. United States</u>, 485 U.S. 681, 687-88 (1988). Similar act evidence should thus be admitted under rule 404(b) where:

> (1) sufficient evidence exists for the jury to find the defendant committed the similar act,
> (2) the similar act is introduced to prove a material issue at trial,
> (3) the similar act is not too remote in time[3], and
> (4) if admitted to prove intent, the other act must be similar to the charged offense.

<u>United States v. Arambula-Ruiz</u>, 987 F.2d 599, 603 (9th Cir. 1993); <u>United States v. Houser</u>, 929 F.2d 1369, 1373 (9th Cir. 1990); <u>Spillone</u>, 879 F.2d at 518-20. A district court need only make a "threshold inquiry" as to whether the proposed similar act evidence is probative of a material issue, in order to admit such evidence.[4]

---

[3] The Ninth Circuit has refused to adopt a bright line rule regarding remoteness, holding that a conviction more than ten years earlier was not too remote. <u>Spillone</u>, 879 F.2d at 519; <u>United States v. Ross</u>, 886 F.2d 264, 267 (9th Cir. 1984) (13 year old conviction), <u>United States v. Hadley</u>, 918 F.2d 848, 851 (9th Cir. 1990).

[4] Previous Ninth Circuit caselaw required a showing of "clear and convincing" proof that a defendant committed the

12

In <u>United States v. Curtin</u>, 489 F.3d 935, 944 (9th Cir. 2007) (en banc) (citing <u>United States v. Romero</u>, 282 F.3d 683, 688 (9th Cir. 2002)), the Ninth Circuit noted:

> Rule 404(b) is a rule of inclusion-not exclusion-which references at least three categories of other "acts" encompassing the inner workings of the mind: motive, intent, and knowledge. Once it has been established that the evidence offered serves one of these purposes ... the "only" conditions justifying the exclusion of the evidence are those described in Rule 403: unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.

## III. DISCUSSION

The United States has an affirmative obligation to prove knowledge and intent as elements of the offenses charged. Additionally, it is likely that the defense will argue lack of knowledge and intent with regard to the possession of firearms and drugs.

Accordingly, the government intends to use the evidence from its Written Notice Pursuant to Federal Rule of Evidence 404(b) affirmatively in its case-in-chief to prove the elements of the charge crimes as well as defendants' knowledge, intent, and absence of mistake or accident.  Some of the evidence

---

similar act. However, the Supreme Court's intervening decision in <u>Huddleston</u>, 485 U.S. at 685 required only a finding by the jury that a defendant committed the similar act.  <u>United States v. Rubio-Villareal</u>, 927 F.2d 1495, 1503 n.8 (9th Cir. 1991).  <u>See also</u> <u>Spillone</u>, <u>supra</u>, 879 F.2d at 518 n.1.  A prior conviction is certainly sufficient to establish that a defendant committed the similar act.  <u>United States v. Vo</u>, 413 F.3d 1010, 1018 (9th Cir. 2005), <u>cert. denied</u>, 126 S.Ct. 785 (2005).

Defendant seeks to exclude is "inextricably intertwined" with the evidence supporting the charged criminal conduct and provides the context in which the charged criminal conduct occurred.  Some of the evidence Defendant seeks to exclude, even when applying Rule 404(b) of the Federal Rules of Evidence, is admissible.

Defendant, in his superceding motion in limine, only seeks to exclude certain evidence as documented in the United States Written Notice Pursuant to Federal Rule of Evidence 404(b) dated December 27, 2006.  The following discussion will analyze the admissibility of the evidence Defendant seeks to exclude.

**A.    Defendant's Involvement with Robert TOMASZYCKI's Drug Distribution Including but Not Limited to How and Why TOMASZYCKI Involved Defendant in His Drug Distribution.**

Evidence that Defendant was involved with TOMASZYCKI's drug distribution as protection is "inextricably intertwined" with Defendant's possession of a loaded Beretta .25 caliber semiautomatic pistol at TOMASZYCKI's residence at 62-148A Lokoea Place on or about February 29, 2004 because it "constitutes a part of the transaction that serves as the basis for the criminal charge."

TOMASZYCKI was a drug dealer who enlisted the help of Defendant to locate some missing drugs as well as serve as protection for TOMASZYCKI's drugs.  Sometime in mid-February 2004 Defendant asked TOMASZYCKI for a place to stay.  TOMASZYCKI gave Defendant an open invitation to stay at the 62-148A Lokoea Place

14

residence.  TOMASZYCKI last saw Defendant at his residence on

February 28, 2004, a day before a federal search warrant was

executed on 62-148A Lokoea Place.  Such evidence establishes

Defendant's presence at TOMASZYCKI's residence and Defendant's

possession of the loaded Beretta .25 caliber semiautomatic pistol

because it explains why Defendant would be staying at

TOMASZYCKI's residence and why Defendant possessed the loaded

Beretta .25 caliber semiautomatic pistol.

**B.    Defendant's Possession and Use of Firearms on Occasions
Other than Those Named in the Indictment.**

The government will NOT seek to introduce possession

and use of grenade launchers.  However, evidence that Defendant

possessed firearms on occasions other than charged in the

indictment is relevant to establish Defendant knowingly possessed

the firearms in Counts 1, 4, and 8.

Such evidence includes: 1) Defendant's conviction in

the State of Hawaii Cr. No. 94-1299 on January 11, 1995, for

Possession of a Firearm by a Person Convicted of Certain Crimes

and Place to Keep Firearm Loaded with Ammunition; and 2)

Defendant possessing three firearms on February 27, 2004 at

TOMASZYCKI's residence at 62-148A Lokoea Place.

Given the firearms in Counts 1, 4, and 8 were not found

on Defendant's person but rather only in Defendant's close

proximity, said evidence is necessary to establish possession by

Defendant.  Said-evidence is similar act evidence that should be

15

admitted under rule 404(b).

The Ninth Circuit consistently has approved the admission of prior convictions in order to prove intent, knowledge, and absence of mistake or accident. For example, the Ninth Circuit approved the admission of a prior drug conviction where a defendant had been found driving a car rented by a third party containing drugs in United States v. Goss, 2007 WL 4165460 (9th Cir. 2007). The Goss Court noted that the third party rental put knowledge at issued in that it allowed the defendant to claim more plausibly that he did not know there were drugs in the car. Id.

Similarly, the Vo Court approved the admission of 404(b) evidence, i.e., an earlier conviction for selling cocaine, where the defendant was charged with conspiracy to possess with the intent to distribute methamphetamine after he received a FedEx containing methamphetamine because the conviction for selling cocaine tended to show evidence of the defendant's knowledge of drug trafficking and distribution in general. "The conviction tended to show that Vo was familiar with distribution of illegal drugs and that his actions in this case were not an accident or mistake." Id. at 1019; see also United States v. Estrada, 453 F.3d 1208 (9th Cir. 2006)(fingerprints on a triple-neck flask from a 1994 storage locker, found ten years before charged incident of possessing pseudoephedrine to make

16

methamphetamine admissible because tends to show that defendant knew or had reasonable cause to know that pseudoephedrine would be used to make methamphetamine).

The Ninth Circuit has found error, however, where a lower court has admitted evidence that the defendant previously had been found in cars in which weapons and shell casings were found to prove a knowing Felon in Possession.  United States v. Rendon-Duarte, 490 F.3d 1142, 1145 (9th Cir. 2007).  The Rendon-Duarte Court pointed out that the previous incidents did not establish the "logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time." Id.

However, other Circuits have allowed the introduction of a felon's previous conviction for being a felon in possession as 404(b) evidence because it was relevant to a defendant's knowledge that a firearm was in the car the defendant was within. See: United States v. Fuller, 453 F.3d 274, (5th Cir. 2006); United States v. Strong, 415 F.3d 902 (8th Cir. 2005);  United States v. Moran, 503 F.3d 1135, (10th Cir. 2007).  Additionally, other Circuit have allowed evidence of a defendant's prior conviction for being felon in possession because the knowing possession of a firearm in the past supported the inference that the defendant had the same knowledge in the charge offense.  See: United States v. Walker, 470 F.3d 1271, 1274 (8th Cir. 2006)

17

("Evidence that a defendant possessed a firearm on a previous occasion is relevant to show knowledge and intent."); United States v. Jernigan, 341 F.3d 1273, 1281 (11th Cir. 2003) ("[T]he caselaw in this and other circuits establishes clearly the logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time (or, put differently, that his possession at the subsequent time is not mistaken or accidental)."); United States v. Cassell, 292 F.3d 788, 795 (D.C. Cir. 2002) ("A prior history of intentionally possessing guns, or for that matter chattels of any sort, is certainly relevant to the determination of whether a person in proximity to such a chattel on the occasion under litigation knew what he was possessing and intended to do so."). Id. at 1144 - 1145.

    1)   Defendant's conviction in the State of Hawaii Cr. No. 94-1299 on January 11, 1995, for Possession of a Firearm by a Person Convicted of Certain Crimes and Place to Keep Firearm Loaded with Ammunition

On June 6, 1994, Defendant was arrested by the HPD once he was found to be driving a stolen car, while carrying a loaded Llama .38 caliber handgun in the waistband of his pants, at the small of his back. Defendant also possessed an ice pipe containing methamphetamine residue and over $1,000.00 in his pants pocket, one packet of methamphetamine, and one packet of heroin, in the pocket of his jacket. Further, a second loaded gun, a .25 caliber pistol, was found within a canvas bag in the

18

rear seat area of the car.  Defendant was charged with
Unauthorized Control of a Propelled Vehicle, a violation of
Section 708-836, Hawaii Revised Statutes, Felon in Possession of
a Firearm, in violation of Section 134-6, H.R.S., Driving Without
a License, in violation of Section 286-102, H.R.S., and Promoting
Dangerous Drugs in the Third Degree, in violation of Section
712-1243, H.R.S.

    On January 11, 1995, Defendant was convicted of *inter
alia:* Felon in Possession of a Firearm and Possessing a
Dangerous Drug (two counts).  He was sentenced to ten (10) years
incarceration.  On June 24, 1999, Defendant was paroled.  On
October 12, 2000, he was retaken and incarcerated until June 17,
2003 when he was place back on parole.  On March 11, 2004, he was
again retaken and his term ended on July 10, 2004.

    First, the 1995 conviction will be sufficient evidence
for the jury to find Defendant committed the similar act.

    Second, the similar act will be introduced to prove
material issues at trial.  In this case, Defendant's knowing
possession of the firearms in Count 1, 4, and 8.  Count 1 charges
Defendant with Felon in Possession of a Firearm.  This charge
stems from Defendant's arrest, when he was found tucked into the
crawlspace of a ceiling, with a loaded Smith and Wesson 9 mm
caliber semiautomatic pistol and methamphetamine within arm's
reach.  Count 4 charges Defendant with Felon in Possession of a

19

Firearm, in that on February 29, 2004, a loaded Beretta .25 caliber semiautomatic pistol was found tucked under a mattress of a bed in a room that Defendant had been occupying and where he kept personal property.  Count 8 charges Defendant with Felon in Possession of a Firearm, in that on September 6, 2003, Defendant was found asleep in a stolen car in the parking lot of the Golden Coin Bakery.  A loaded Colt .45 caliber semiautomatic pistol was tucked under the armrest of the front seat of the car in which Defendant was seated.

This Court should permit the government to admit the facts of Defendant's 1994 arrest and resulting 1995 convictions, including Defendant's knowing possession of the loaded .38 caliber Llama handgun (tucked in his waistband at the small of his back), over $1000.00, and the packets of methamphetamine and heroin because the 1994 incident tends to prove knowledge, intent to possess a firearm in relation to a drug trafficking crime, and lack of accident or mistake in Counts 1, 4, and 8 of the Third Superseding Indictment.

As to Count 1, it tends to prove that, as he lay in the crawlspace of a house in Ewa Beach, he knew that a loaded Smith and Wesson 9 mm caliber semiautomatic pistol and drugs were an arm's length away.  As to Count 4, it tends to prove that, while he was not present at the time the firearm was recovered from the Haleiwa, he knew that the loaded Beretta .25 caliber

20

semiautomatic pistol was there.  As to Count 8, it tends to prove
that, when he was asleep in front of the Golden Coin Bakery with
a loaded gun under the armrest, he knew that a loaded Colt .45
caliber semiautomatic pistol was there.

Third, the 1995 conviction is not too remote in
time as it occurred less than 10 years after the crimes
charged in the Third Superceding Indictment. Additionally,
much of this intervening time passed while he was
incarcerated.

Fourth, the 1995 conviction is for acts similar
to the charged offenses in Counts 1, 4, and 8.

2)    Defendant possessing three firearms on February
      27, 2004 at TOMASZYCKI's residence at 62-148A
      Lokoea Place

In United States v. Moorehead, 57 F.3d 875 (9th Cir.
1995), the Ninth Circuit held that the trial court did not abuse
it's discretion when it allowed the defendant's "living
companions" to testify that on prior occasions they had seen the
defendant with a gun resembling the one the defendant was charged
with possessing.  The Court found that said-evidence was relevant
to knowledge and control of the firearm in question and was not
character evidence but direct evidence of the crime.  Here, even
if said-evidence is not to be considered direct evidence, it
should be introduced as similar act evidence.

A cooperator will testify that he observed Defendant possess three different firearms on February 27, 2007, while at Tomaszycki's residence at 62-148A Lokoea Place.

First, such evidence will establish that Defendant possessed the three other firearms in the same location and near the same time as the loaded Beretta .25 caliber semiautomatic pistol charged in Count 2.

Second, Defendant's possession of other firearms at 62-148A Lokoea Place a couple of days prior establishes Defendant's knowing possession of the loaded Beretta .25 caliber semiautomatic pistol found under the mattress in the room in which Defendant was occupying.

Third, Defendant's possession of the other firearms occurred a couple of days before his possession of the loaded Beretta .25 caliber semiautomatic pistol charged in Count 2.

Fourth, Defendant's possession of the other firearms would be similar to his possession to possession of the loaded Beretta .25 caliber semiautomatic pistol charged in Count 2.

## C.   Defendant's Possession and use of Drugs on Occasions Other than Those Named in the Indictment.

Evidence that Defendant possessed drugs in distributional amounts on occasions other than charged in the indictment is relevant to establish Defendant's possession of drugs with the intent to distribute in the charged counts.

In its filing of June 25, 2007 the government has

22

stated it sought to also introduce evidence of Defendant's possession of an ounce of ice "fronted" to him by LANGAMAN in late 2003; and Defendant's purchase of four ounces of ice for $5,000.00 from LANGAMAN in late 2003 or early 2004. However, the government will NOT seek to introduce evidence of this in its case-in-chief. However, if Defendant makes this evidence relevant or otherwise opens the door to this evidence, government will seek to introduce it.

The government does seek to introduce evidence of: 1) Defendant selling drugs for TOMASZYCKI, 2) Defendant's possession of stolen drugs that Defendant would give HEFFELFINGER for his personal use in mid to late 2003, and 3) Defendant's conviction in the State of Hawaii Cr. No. 94-1299 on January 11, 1995, for Promoting a Dangerous Drug in the Third Degree.

The Ninth Circuit has consistently held that evidence of a defendant's prior possession or sale of narcotics is relevant under Rule 404(b) to issues of intent, knowledge, motive, opportunity, and absence of mistake or accident in prosecutions for possession of, importation of, and intent to distribute narcotics. United States v. Mehrmanesh, 689 F.2d 822, 832 (9th Cir. 1982). When analyzing the similarity of prior drug crimes under Fed. R. Evid. 404(b), the type of activity undertaken, rather than the precise identity of the drugs, is the relevant factor. See United States v. Vizcarra-Martinez, 66 F.3d

23

1006, 1015 (9th Cir. 1995).

Given the government must prove that Defendant possessed with the intent to distribute the methamphetamine charged in Counts 2 and 10, said evidence is necessary to establish both Defendant's possession of methamphetamine (Count 2) and intent to distribute (Counts 2 and 10).  Said-evidence is similar act evidence that should be admitted under rule 404(b).

       1)   <u>Defendant's selling drugs for Tomaszycki</u>

TOMASZYCKI will testify that Defendant sold methamphetamine for TOMASZYCKI in February 2004.

First, this testimony will be sufficient evidence to establish Defendant possessed with intent to distribute methamphetamine previous to his possession of the methamphetamine found on March 11, 2004.

Second, Defendant's previous sale of methamphetamine is material to establish Defendant possessed 6.453 grams of methamphetamine on March 11, 2004 with intent to distribute. Defendant's possession of the methamphetamine with intent to distribute is relevant to demonstrate knowledge, which is a material element of the crime of drug possession under 21 U.S.C. § 841.

Third, this prior incident in February 2004 occurred near the time of the crime charged in Count 2 (March 11, 2004).

Fourth, Defendant's possession and sale of

24

methamphetamine for TOMASZYCKI is similar to his possession on
March 11, 2004 of methamphetamine.

    2)    <u>Defendant's possession of stolen drugs that
Defendant would give HEFFELFINGER for his personal
use in mid to late 2003</u>

This incident involves Defendant giving HEFFELFINGER
methamphetamine that was stolen from others.

First, HEFFELFINGER's testimony will establish that
Defendant did distribute methamphetamine.

Second, the prior incident is material to the current
case because knowledge and intent are elements of the crimes that
the government needs to prove. Defendant's possession of illegal
drugs with intent to distribute is relevant to demonstrate
knowledge, which is a material element of the crime of drug
possession under 21 U.S.C. § 841. Such evidence will establish
that in Counts 2 and 10, Defendant possessed the drugs with the
intent to distribute.

Third, this prior incident (mid to late 2003) occurred
at or near the time of the crimes charged in Count 2 (March 11,
2004) and 10 (July 31, 2003).

Fourth, the similarity between the current and the
prior incidents establish Defendant's knowledge. Evidence of
these prior incidents makes Defendant's knowledge of the drugs
found in Count 2 more probable than it would have been without
that evidence. The fact that the drugs in Count 2 were not found

25

on Defendant puts Defendant's knowing possession at issue by allowing Defendant to claim more plausibly that the drugs were not his and did not know about the drugs.  With regard to both Counts 2 and 10, Defendant will claim that even if he possessed the drugs, he did not have the intent to distribute the drugs.

Under FRE 404(b), evidence of Defendant's prior possession of distributional amounts of drugs should be admitted for the limited purpose of proving that Defendant had knowledge of methamphetamine and possessed it with the intent to distribute it.

**D.    Defendant's Involvement with Dan LANGAMAN's Drug Distribution.**

The government will NOT seek to introduce evidence of this in its case-in-chief in the April 1, 2008 trial.  However, if Defendants make this evidence relevant or otherwise opens the door to this evidence, government will seek to introduce it.  The government will seek to introduce said evidence at the April 22, 2008 trial for the severed counts: 5, 6, and 7.

**E.    Defendant's Armed Robbery of Gilbert "Baka" SORIANO, Travis Heffelfinger, Brian Higa, Deon Valencia, Craig France or any other person not charged in the Third Superceding Indictment.**

The government will NOT seek to introduce evidence of these armed robberies in its case-in-chief.  However, if Defendants make this evidence relevant or otherwise opens the door to this evidence, government will seek to introduce it.

26

**F.    Defendant's holding of drugs and/or weapons or giving or drug or weapons to Travis HEFFELFINGER.**

This similar act evidence was discussed in headings "B" and "C."

**G.    Defendant Stole Hector FERRER's wife's 1999 Nissan on or about August 1, 2003 from the Pacific Marina Inn.**

This evidence is "inextricably intertwined" with the armed robbery of FERRER. Defendant involvement in the theft of FERRER's wife's 1999 Nissan "constitutes a part of the transaction that serves as the basis for the criminal charge." The theft of the vehicle was part and parcel of the armed robbery which netted FERRER's drugs and money. On July 31, 2003, after the car was stolen, FERRER called his wife E.F. to tell her the car was stolen. E.F. then called police to report the car stolen. This evidence establishes Defendant's robbery as occurring on July 31, 2003 and also corroborates the testimony of Ferrer. Given FERRER will be the government's main witness testifying about the armed robbery, it is vital that the government introduce corroboration.

**H.    Items recovered at 91-2240 Fort Weaver Road on March 11, 2004.**

Defendant seeks to exclude evidence of pornography, and syringes and spoons with methamphetamine found at 91-2240 Fort Weaver Road on March 11, 2004 in an Eastsport Backpack. The four other occupants of 91-2240 Fort Weaver Road on March 11, 2004 denied possession of this Eastsport backpack and there was no identification within this Eastsport backpack. The government

27

will seek to introduce these items found at 91-2240 Fort Weaver
Road on March 11, 2004 to establish Defendant's knowing
possession with the intent to distribute of the drugs in Count 2.

The existence of drug paraphernalia (syringes and
spoons) in the Eastsport backpack corroborates the testimony of
cooperators who will establish Defendant's possession of drugs
thereby establishing Defendant's possession of the Eastsport
backpack.  The possession of this Eastsport backpack in turn
establishes Defendant's possession with the intent to distribute
the drugs charged in Count 2.  The evidence of the pornography in
the Eastsport backpack corroborates the testimony of a cooperator
that will establish Defendant's possession the Eastsport backpack
thereby establishing Defendant's possession of .9 mm ammunition
(which is the same caliber as the firearm that was found in the
roof where Defendant was arrest) and a digital scale (which
establishes Defendant's knowing possession of the firearm and
drugs charged in Counts 1, 2, and 3) contained with the Eastsport
backpack.

**I.    Items recovered ("two hooded masks") from 62-148A
        Lokokea Place, Haleiwa.**

Defendant in his Motion seeks to exclude the government
from introducing "two hooded masks" found in a black bag with
other items belonging to Defendant.  The government is only aware
of the recovery of one black cloth mask from within a bag
containing other items linking Defendant to possession of this

28

bag.  The government will NOT seek to introduce this item in its case-in-chief.  However, if Defendant makes this evidence relevant or otherwise opens the door to this evidence, government will seek to introduce it.

**J.   Defendant's criminal history other than Stipulation that Defendant was a convicted felon prior of July 31, 2003.**

The government will seek to introduce evidence of Defendant's criminal history as discussed previously including but not limited to Defendant felony convicions in the State of Hawaii Cr. No. 94-1299 on January 11, 1995.  Additionally, if Defendant takes the stand to testify on his own behalf, pursuant to Federal Rules of Evidence Rule 609, the government will seek to impeach Defendant with previous felony convictions.

**K.   Any reference to Defendant being on Crime Stoppers['] Most Wanted List.**

The government will NOT seek to introduce evidence that Defendant was on Crime Stoppers['] Most Wanted List, however, it will elicit evidence that Defendant was wanted by authorities when they arrested him at 91-2240 Fort Weaver Road on March 11, 2004.  Such evidence is "inextricably intertwined" and necessary for the jury's understanding of why law enforcement went to at 91-2240 Fort Weaver Road and why the were seeking to locate Defendant.

29

**L.**     **Any Mask seized as evidence from either the Haleiwa property or the Ewa Beach property.**

The government will NOT seek to introduce this item in its case-in-chief.  However, if Defendant make this evidence relevant or otherwise opens the door to this evidence, government will seek to introduce it.

**V. <u>CONCLUSION</u>**

The United States submits that the Court should exercise its discretion and at the April 1, 2008 trial[5] admit the proffered evidence as inextricably intertwined with the charged crimes or alternatively under Rule 404(b) with a limiting instruction.[6]

DATED: March 17, 2008, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

/s/ Darren W.K. Ching
By_____
DARREN W. K. CHING
Assistant U.S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

[5] The government has not addressed evidence it seeks to introduce at the April 22, 2008 trial of the severed counts (Counts 5, 6, and 7).

[6] The Court can give Instruction No. 3.10 of the Ninth Circuit Manual of Model Criminal Jury Instructions.

## CERTIFICATE OF SERVICE

I hereby certify that on the date and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at his last known address:

Served by Facsimile:

      JACK SCHWEIGERT, ESQ.
      The Lawyers Building
      550 Halekauwila, Room 309
      Honolulu, HI 96813

      Attorney for Defendant

DATED: March 17, 2008 at Honolulu, Hawaii.


/s/ Darren W.K. Ching
_____