IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-053 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SILVER JOSE GALINDO, | ) | |
| aka: Daniel S. Galindo, | ) | |
| aka: Timothy Mau, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE THIRD
SUPERSEDING INDICTMENT

On April 3, 2008, the Court heard Defendant's Motion to Dismiss the

Third Superseding Indictment.  Assistant U.S. Attorney Darren Ching and

Assistant U.S. Attorney Loretta Sheehan appeared at the hearing on behalf of

Plaintiff; Jack Schweigert, Esq., appeared at the hearing on behalf of Defendant.

After reviewing Defendant's motion and the supporting and opposing memoranda,

the Court DENIES Defendant's Motion to Dismiss.

BACKGROUND

The factual and procedural details of this case are extensive so the

Court only recounts those germane to the instant motion here.  On January 29,

2004, Defendant was indicted by Grand Jury Panel 03-II ("GJ # 1") on a single count of being a felon in possession of a firearm on September 6, 2003.  On April 1, 2004, the same grand jury panel ("GJ # 2") returned a Superseding Indictment charging Defendant with five criminal counts (four new counts plus the original count).  On October 27, 2005, Grand Jury Panel 04-I ("GJ # 3") returned a Second Superseding Indictment charging Defendant with eight criminal counts (five counts from the Superseding Indictment plus three additional counts).  On April 25, 2007, Grand Jury Panel 06-I ("GJ # 4") indicted Defendant on a Third Superseding Indictment ("TSI"), charging Defendant with a total of 11 criminal counts (eight counts from Second Superseding Indictment plus three additional counts).

In the eleven count TSI, the grand jury charged Defendant with the following: Count 1 – Felon in Possession of a Firearm and Ammunition; Count 2 – Possession with the Intent to Distribute 5 Grams or More of Methamphetamine; Count 3 – Possession of a Firearm in Furtherance of a Drug Trafficking Crime; Count 4 – Felon in Possession of a Firearm and Ammunition; Count 5 – Felon in Possession of a Firearm; Count 6 – Tampering with a Person with Information About a Federal Offense; Count 7 – Possession of a Firearm in Furtherance of a Crime of Violence; Count 8 – Felon in Possession of a Firearm and Ammunition; Count 9 – Felon in Possession of a Firearm; Count 10 – Possession with the Intent

2

to Distribute 5 Grams or More of Methamphetamine; Count 11 – Possession of a

Firearm in Furtherance of a Drug Trafficking Crime.  Trial was scheduled to

commence on April 1, 2008.

On March 29, 2008, Defendant received the four grand jury

transcripts that comprised the basis for the four different indictments.  At a hearing

held on March 31, 2008, Defendant orally moved to continue the trial so that he

could further review the transcripts, which he claimed indicated that there may

have been prosecutorial misconduct during the grand jury proceeding, thus tainting

the TSI.  At the hearing, Defendant argued that the TSI should be dismissed

because of the cumulative impact of the following examples of prosecutorial

misconduct that occurred during the grand jury proceedings: (1) excessive use of

hearsay testimony; (2) the use of "we" during the first three grand juries, which

constituted improper vouching; (3) the repetitive use of leading questions; and (4)

providing the grand jury that returned the TSI with transcripts of the three previous

grand juries, thus improperly alerting the grand jurors to the previous indictments.

This Court ordered the parties to submit written briefs on the issues raised by

Defendant at the hearing by noon on April 2, 2008 and continued the trial until

April 4, 2008 (Doc. # 226).

On April 2, 2008, Defendant filed the instant Motion to Dismiss (Doc. # 227). Defendant's motion is made pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) and is based on the Fifth Amendment right to a fair and impartial grand jury. Also on April 2, 2008, the Government filed a motion in opposition (Doc. # 228).

## STANDARD OF REVIEW

Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(B), a defendant may raise before trial "a motion alleging a defect in the indictment or information – but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence. United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1995).

In advancing a grand jury misconduct claim, a defendant must overcome the presumption of regularity which attaches as a matter of law to grand jury proceedings. See, e.g., United States v. R. Enterprises, Inc., 498 U.S. 292, 301 (1991). Dismissal of an indictment is appropriate only if it is established that the alleged violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial

influence of such violations.  Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988).

Federal courts draw their power to dismiss indictments from two sources.  United States v. Isgro, 974 F.2d 1091, 1094 (9th Cir. 1992).  First, a court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding.  Id. "Constitutional error is found where the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice to the defendant."  United States v. Larrazolo, 869 F.2d 1354, 1357-58 (9th Cir. 1989) (internal quotation and citation omitted).  Constitutional error may also be found if the defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed.  Isgro, 974 F.2d at 1094.

Second, a district court may draw on its supervisory powers to dismiss an indictment.  Id.  "The supervisory powers doctrine is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the United States Constitution or Congress to supervise the administration of justice."  Id. (internal quotation and citation omitted).  Before it may invoke this

power, a court must first find that a defendant is actually prejudiced by the misconduct.  Id.  Absent "grave" doubt that the decision to indict was free from the substantial influence of the misconduct, a dismissal is not warranted.  Id.

In United States v. Samango, 607 F.2d 877, 885 (9th Cir. 1979), the Ninth Circuit affirmed a district court's dismissal of an indictment because ". . . the manner in which the prosecution obtained the indictment represented a serious threat to the integrity of the judicial process."  The Ninth Circuit further held that dismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way, as where perjured testimony has knowingly been presented.  Id. at 882.  Even if the prosecutor's actions constituted misconduct, an appellant still must demonstrate a "reasonable inference of bias on the part of the grand jury resulting from those actions."  United States v. De Rosa, 783 F.2d 1401, 1406 (9th Cir. 1986).  In sum, "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits.  The Fifth Amendment requires nothing more."  Costello, 350 U.S. at 363.

## DISCUSSION

Defendant argues that the four grand jury proceedings were tainted by prosecutorial misconduct as follows: (1) January 29, 2004 Grand Jury – the Assistant U.S. Attorney ("AUSA") extensively resorted to asking leading questions, unnecessarily disclosed Defendant's entire felony history, and vouched for witnesses by using the term "we" while asking questions; (2) April 1, 2004 Grand Jury – the AUSA extensively resorted to asking leading questions, unnecessarily disclosed Defendant's entire felony history, vouched for witnesses by using the term "we" while asking questions, and avoided all mention of credibility issues existing with non-testifying cooperating witnesses; (3) October 27, 2005 Grand Jury – the AUSA extensively resorted to asking leading questions, unnecessarily disclosed Defendant's entire felony history, vouched for witnesses by using the term "we" while asking questions, and avoided all mention of credibility issues existing with non-testifying cooperating witnesses; and (4) April 25, 2007 Grand Jury – the AUSA extensively resorted to asking leading questions, unnecessarily disclosed Defendant's entire felony history, and avoided all mention of credibility issues existing with non-testifying cooperating witnesses.

The Court initially notes that the only indictment at issue here is the TSI.  Defendant's arguments relating to prosecutorial misconduct during the first

three grand juries, which do not form the basis for the criminal charges upon which

Defendant is to be tried, are essentially moot.  This is buttressed by the fact that,

during GJ # 4, the AUSA gave the grand jury the following limiting instruction:

> I just want to remind you that the fact that a previous
> grand jury heard these cases, you're not to consider the
> fact that they did or did not get a true bill in making your
> decision. You need to listen to all the evidence that's
> presented here today making your determination as far as
> the true bill or not.

(Ex. 12, Transcript of April 25, 2007 ("April Transcript") at 3:4–9, attached to

Def.'s Mot. to Dismiss.)  Nonetheless, erring on the side of caution and because

Defendant avers that it is the cumulative effect of these alleged incidents of

misconduct that improperly influenced the GJ # 4's decision to indict, the Court

will address the allegations of prosecutorial misconduct raised in Defendant's

motion individually.

I.  Use of Hearsay Testimony

Defendant alleges that the AUSA's use of hearsay testimony during

all four grand jury proceedings was improper.  Defendant premises this allegation

on the fact that Bureau of Alcohol, Tobacco, and Firearms ("ATF") Agent Ty

Torco was the sole witness at each grand jury and, accordingly, his testimony was

not entirely based on first hand knowledge.[1]

The Federal Rules of Evidence do not apply in proceedings before grand juries. Fed. R. Evid. 1101(d)(2). This rule reflects that concept that the grand jury operates independently of the courts. Costello v. United States, 350 U.S. 359, 409 (1956). Relaxation of the rules of evidence is in part due to the fact that the grand jury is an investigative entity rather than one that determines guilt beyond a reasonable doubt; therefore, "[s]trict observance of trial rules in the context of the grand jury's preliminary investigation would result in interminable delay but add nothing to the assurance of a fair trial." R. Enterprises, 498 U.S. at 298 (internal quotation and citation omitted). Therefore, an indictment may be based solely on hearsay and such an indictment does not violate the Fifth Amendment. Id. at 363; Samango, 607 F.2d 877, 881 (9th Cir. 1979). A grand jury, however, must not be misled into thinking that it is getting eyewitness testimony when it is actually receiving second-hand testimony. U.S. v. Trass, 644 F.2d 791, 793 (9th Cir. 1981).

Defendant presented no evidence, either at the hearing or in his moving papers, that GJ # 4 was misled into thinking that it was getting eyewitness

---

[1] It is this Court's understanding that Agent Torco participated in some, but not all, of the law enforcement activities surrounding the various arrests of Defendant.

from Agent Torco.  Agent Torco was merely a knowledgeably representative of the

Government agency that bore the burden of investigating Defendant and testified

to his knowledge of the events surrounding Defendant's criminal charges.  The use

of hearsay testimony here was not improper and there is no indication that it

negatively impacted GJ # 4's ability to render an unbiased decision on the merits of

the TSI.  Defendant's contention that the use of hearsay was improper is therefore

unavailing.

II.  Vouching

Defendant also argues that the AUSA improperly used the term "we"

during the first three grand juries and that this constituted improper vouching.

Vouching occurs when the prosecution places the prestige of the Government

behind a witness or when the prosecution indicates that a witness' testimony is

supported by evidence not properly before the jury.  United States v. Leon-Reyes,

177 F.3d 816, 821 (9th Cir. 1999).  "Vouching is especially problematic in cases

where the credibility of the witnesses is crucial, and in several cases applying the

more lenient harmless error standard of review, [courts] have held that such

prosecutorial vouching requires reversal."  United States v. Necoechea, 986 F.2d

1273, 1276 (9th Cir. 1993).

The AUSA who appeared before the first three grand juries used the

10

word "we" when asking questions of Agent Torco.  The use of "we," however, was

not meant to place the prestige of the Government behind Agent Torco or to bolster

Agent Torco's credibility.  After all, Agent Torco, in his position with the ATF,

already enjoyed the prestige of being a government agent.  Furthermore, the

Court's careful review of the relevant grand jury transcripts indicates that the use

of "we" was a reference to the evidence the AUSA sought to convey through

Agent Torco as an agent of the Government.  Regardless, even if there was

vouching during the first three grand juries, Defendant's arguments still fails

because (1) the first three grand jury proceedings are not at issue for purposes of

the TSI, (2) there was no vouching during GJ # 4, and (3) Defendant offers no

evidence that the alleged vouching "substantially influenced the grand jury's

decision to indict."  Bank of Nova Scotia, 487 U.S. at 256.  Finally, any error by

the AUSA at the first three grand juries was cured by the limiting instruction given

at the beginning of GJ # 4, which cautioned the grand jury to base their decision to

indict solely on the evidence presented to them that day.

III.  Leading Questions

        Defendant asserts that the excessive use of leading questions was

improper.  Leading questions alone are not grounds for dismissal of an indictment.

See United States v. Brown, 872 F.2d 385, 387 (11th Cir. 1989); United States v.

Jacobson, 691 F.2d 110, 115-16 (2nd Cir. 1982).  As stated previously, the Federal

Rules of Evidence are inapplicable to grand jury proceedings.  Fed. R. Evid.

1101(d)(2).

Defendant cites no authority for his proposition that the use of leading

questions was inappropriate.  Nor does Defendant supply this Court with any law

suggesting that the use of leading questions can become "excessive."  Rather,

Defendant appears to be arguing that the leading questions, in conjunction with the

other alleged instances of prosecutorial misconduct, constitutes cumulative

misconduct sufficient to undermine the legality of the indictment.  As set forth in

the discussion above and below, this Court's careful review of the record reveals

no indication of misconduct on the part of the AUSA during GJ # 4.  Moreover, the

use of leading questions cannot be construed as excessive when many of the

AUSA's questions were not in any way leading.  Defendant's argument therefore

fails.

IV.  Providing Defendant's Criminal History

Defendant argues that asking questions to discredit a witness, like

giving all of Defendant's felony criminal history when only the fact that he is a

felon is relevant, is grossly prejudicial.  Defendant cites no law for this proposition

and the Government did not address this issue in its motion in opposition.

While the Ninth Circuit does not appear to have addressed this issue

directly, the Second and Eight Circuits have found that there is no misconduct in

informing the grand jury of prior convictions.  See United States v. Levine, 700

F.2d 1176, 1179 (8th Cir. 1983); United States v. Camporeale, 515 F.2d 184, 189

(2nd Cir. 1975).  Accordingly, this Court finds that there was nothing improper

about the AUSA informing the grand juries of Defendant's felony criminal history

V.  Previous Grand Jury Transcripts

Defendant argues that the presentation to GJ # 4 of the first three

grand jury transcripts also constituted prosecutorial misconduct.  The Court first

notes that GJ # 4 would have been aware that Defendant had been indicted

previously based on the fact that they were considering a Third Superseding

Indictment.  Furthermore, the AUSA gave a clear limiting instruction that

eliminated the possibility that GJ # 4 would be biased by the receipt of the previous

transcripts:

> I just want to remind you that the fact that a previous
> grand jury heard these cases, you're not to consider the
> fact that they did or did not get a true bill in making your
> decision. You need to listen to all the evidence that's
> presented here today making your determination as far as
> the true bill or not.

(April Transcript at 3:4–9.)  The Court finds that this instruction greatly diminished

13

the possibility that GJ # 4 was prejudiced by the receipt of the previous transcripts.

Moreover, even assuming GJ # 4 was influenced by the receipt of the transcripts,

this would not rise to the level requiring dismissal of the indictment.  See, e.g.,

Samango, 607 F.2d at 881 (the district court should dismiss an indictment "[o]nly

in a flagrant case, and perhaps only where knowing perjury, relating to a material

matter, has been presented to the grand jury . . . ." (internal quotation and citation

omitted.))

VI.  Cumulative Impacts

As discussed previously, Defendant contends that the alleged

prosecutorial misconduct during the four grand juries had the cumulative effect of

tainting the TSI.  Notwithstanding the Court's findings that none of the alleged

individual incidents rose to a level of impropriety sufficient to cast doubt upon the

TSI, the Court addresses the cumulative impact of Defendant's allegations should

they be taken as true.  For his cumulative misconduct argument, Defendant

principally relies on Samango, in which the Ninth Circuit upheld the district

court's dismissal of an indictment for, among other reasons, the fact that the

indicting grand jury was provided with transcripts from previous grand juries

without any limiting instruction.  The incidents of alleged misconduct here,

however, even if taken as true, do not rise to the level required by the Ninth Circuit in <u>Samango</u>.

The <u>Samango</u> facts are extensive, but a few are important here: (1) Samango was indicted by a grand jury after lengthy transcripts were merely deposited with the grand jury; (2) there were indications that members of the grand jury were not familiar with the transcripts; (3) the prosecutor knew but did not warn the grand jury of the doubtful credibility of the witness who had testified at one of the previous grand jury hearings; (4) the court had previously informed the prosecutor that, given the lack of credibility of this witness, live testimony before the grand jury was advisable; (5) the prosecutor did not present testimony of this same witness for purposes of the third grand jury proceeding even though he was in custody; (6) the prosecutor did not inform the grand jury on how to use the transcripts to evaluate the truthfulness of the hearsay contained therein; (7) the prosecutor had a conversation with the grand jury foreman off the record and told him that he needed a result in a limited time; (8) the agent who testified before the grand jury was not actively involved with the investigation and his testimony was based almost exclusively on hearsay; and (7) the grand jury appeared uninformed as to its ability to subpoena witnesses.  <u>Samango</u>, 607 F.2d at 883-85.

Here, even if Defendant's various allegations are assumed to have a basis in fact, they still would not rise to the level where dismissal of the indictment is required. Hearsay evidence and the asking of leading questions is allowable before grand juries, as is evidence of a defendant's criminal history. Any bias that could be inferred from the provision of the three previous transcripts was cured by the limiting instruction provided by the AUSA at the beginning of GJ # 4. The vouching during the first three grand juries, while inadvisable, could not have had a significant impact on the credibility of the testifying witness since that witness was already cloaked in the authority of the U.S. Government. Finally, the Court again notes that any defect that occurred during the first three grand juries was cured by GJ # 4 in which, by Defendant's own admission, the only potential defects were the use of leading questions, the disclosure of Defendant's criminal history, and the avoidance of credibility issues existing with non-testifying cooperating witnesses. As at least two of these three allegations are explicitly allowed by federal case law, there is no possibility that there were impermissible cumulative effects on GJ # 4's decision to indict Defendant.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion

to Dismiss the Third Superseding Indictment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, April 4, 2008.



                                         _____
                                         David Alan Ezra
                                         United States District Judge

United States v. Silver Jose Galindo, CR No. 04-053 DAE; ORDER DENYING
DEFENDANT'S MOTION TO DISMISS THE THIRD SUPERSEDING
INDICTMENT