EDWARD H. KUBO, JR.        #2499
United States Attorney
District of Hawaii

DARREN W.K. CHING          #6903
LORETTA SHEEHAN            #4160
Assistant U.S. Attorneys
PJKK Federal Bldg., Room 6-100
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: Darren.Ching@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-00053 DAE |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S OPPOSITION TO |
| | ) | DEFENDANT'S MOTION FOR |
| vs. | ) | JUDGMENT OF ACQUITTAL AND/OR |
| | ) | ALTERNATIVELY FOR A NEW TRIAL; |
| SILVER JOSE GALINDO, | ) | CERTIFICATE OF SERVICE |
| aka Daniel S. Galindo, | ) | |
| aka Timothy Mau, | ) | DATE: May 7, 2008 |
| | ) | TIME: 9:45 a.m. |
| Defendant. | ) | JUDGE: David A. Ezra |
| | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR
JUDGMENT OF ACQUITTAL AND/OR ALTERNATIVELY FOR A NEW TRIAL

        The United States of America, through its attorneys,
hereby respectfully submits this opposition to Defendant's Motion
for Judgment of Acquittal and/or Alternatively for a New Trial.

I.   **INTRODUCTION**

        The defendant, Silver Jose Galindo ("GALINDO"), moves
this Court for a judgment of acquittal or a new trial.  GALINDO

1

contends that witnesses provided false testimony and the evidence presented was insufficient to support his convictions.  Federal Rules of Criminal Procedure Rule 29(c) allows a defendant to move for judgment of acquittal based on insufficiency of evidence. Federal Rules of Criminal Procedure Rule 33 authorizes the Court to grant a new trial if the "interest of justice so requires."

No false testimony was provided and the evidence at trial supported GALINDO's convictions.  Neither an acquittal or a new trial is warranted and this motion should be denied.

## II.  <u>DISCUSSION</u>

### A.  The Motion for Judgment of Acquittal Should be Denied because There was Sufficient Evidence Supporting the Verdict

GALINDO renews his motion for a judgment of acquittal, challenging the sufficiency of the evidence for each count of conviction.  He now claims that in Counts 1-3 and 4, his convictions were based on false testimony.  Additionally, he claims that the evidence did not support that in Count 3, he possessed a firearm during and in relation to his drug trafficking crime as charged in Count 2.  Finally, he claims that in Count 8 and Counts 10 and 11, there was insufficient evidence to support his convictions.

This Court has already found that when viewing the evidence in the light most favorable to the government a reasonable jury could find the elements of the crimes beyond a

reasonable doubt.  In doing so, this Court denied GALINDO's
pre-verdict Rule 29 motion.  There is no reason that the outcome
should be any different now.

      1.  <u>The Standard</u>

A Rule 29 motion is not an opportunity for GALINDO to
re-argue the evidence in the hopes that this Court will reach a
conclusion different from that found by the jury.  To prevail on
this motion, GALINDO must show that all of the evidence at trial,
taken together, was insufficient to sustain a conviction.
Fed.R.Crim.P. 29(a).  This is a heavy burden.  See <u>United States
v. Walker</u>, 142 F.3d 103, 112 (2d Cir. 1998).  The evidence must
be viewed in the light most favorable to the prosecution, and the
verdict must be respected as long as **"any** rational trier of fact
could have found the essential elements of the crime beyond a
reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)
(emphasis in original).  A conviction should not be disturbed as
long as a jury could "rationally choose the hypothesis that
supports a finding of guilt rather than the hypotheses that are
consistent with innocence." <u>United States v. Lopez-Alvarez</u>, 970
F.2d 583, 589 (9th Cir. 1992).

      2.  The Evidence was Not Only Sufficient,
<u>     It was Overwhelming</u>

      a.  <u>Counts 1 - 3</u>

GALINDO argues that ". . . the critical testimony that
tied Mr. Galindo to possession of the weapon and the drugs

involved the testimony of Officers Tafaoa and Aiu." Def. Mot. at 1-2. However, this is an overstatement. The evidence produced was more than just the testimony of these officers. The government established GALINDO's possession of the loaded firearm and methamphetamine with other overwhelming evidence.

GALINDO was alone in the attic of the Ewa Beach home of Charles Ingram. Approximately three to five feet away from where GALINDO was first seen, Officer Tafaoa found GALINDO's firearm and methamphetamine. These items were in a jacket that appeared to have been folded and just placed there. It appeared that someone had placed items in the jacket, with the flaps folded over and the items bundled up. The area where the jacket was recovered was undisturbed except for where GALINDO was seen.

Officer Tafaoa unfolded the jacket and found the loaded Smith & Wesson 9 mm semiautomatic firearm in a black holster, and the driver license with GALINDO's photograph but Timothy Mau's information and a social security card in the name of Timothy Mau within a wallet. Officer Tafaoa then placed the items back into the jacket and handed them to Officer Aiu.

This unique firearm was identified by Robert Tomaszyscki and Travis Heffelfinger as the one possessed by GALINDO at Robert Tomaszyscki's house one week prior. The black holster that held the firearm was identified by Walter Cacho, Tomaszyscki, and Heffelfinger as GALINDO's.

4

Other items found in the living area of Charles Ingram's Ewa Beach home tied GALINDO to the firearm and drugs. The Eastsport backpack that Heffelfinger identified as GALINDO's and found in the living room, contained drug paraphernalia used by GALINDO to inject methamphetamine as well as a flip top scale used by GALINDO to weigh methamphetamine. Additionally, 9 mm ammunition which matches the loaded Smith & Wesson 9 mm semiautomatic firearm possessed by GALINDO in the attic was found in this backpack. Finally, an AOL tin with a Haleiwa address similar to that of Tomaszyscki's house (except with a different unit number) was also found in this backpack.

This backpack was found on top of another bag belonging to GALINDO. This bag was a blue Concourse bag that contained a greeting card with a picture of GALINDO's girlfriend Genevive Avilla, an envelope addressed to "My Baby Boy" and signed by "Baby girl" which matched an envelope addressed to "Silver Galindo" with a letter addressed to Silver and signed by "Baby Girl" found in GALINDO's bag from Tomaszyscki's Haleiwa home.

Charles Ingram established GALINDO was distributing methamphetamine while in Ingram's house the same day GALINDO was caught in the attic with the methamphetamine and the loaded firearm. Ingram picked up half of an ounce (approximately 14 grams) of methamphetamine for GALINDO and GALINDO "distributed" two eightballs (3.54 grams): one to Ingram and one to another

male.  They then smoked some of what was left (7 grams) and GALINDO kept the rest.  The remaining methamphetamine (6.453 grams)[1] was found up in the attic with GALINDO.

GALINDO also argues that his conviction for knowingly carrying and possessing the loaded 9 mm semiautomatic firearm was not during and in relation to the drug trafficking crime in Count 2.  Given the totality of the circumstances a reasonable jury could find beyond a reasonable doubt that GALINDO carried and possessed this firearm during in and relation to the drug trafficking crime in Count 2.

In  United States v. Krouse, 370 F.3d 965, 968 (9th Cir. 2004), the Ninth Circuit held that the evidence was sufficient to support the § 924(c)(1)(A) conviction because "[n]o less than five high caliber firearms, plus ammunition, were strategically located within easy reach in a room containing a substantial quantity of drugs and drug trafficking paraphernalia."  In order to sustain a § 924(c)(1)(A) conviction, the government must show that the defendant intended to use the firearm to promote or facilitate the drug crime.  Id. at 967.  Evidence of this intent is sufficient "when facts in evidence reveal a nexus between the guns discovered and the underlying offense."  Id. at 968.  Whether the requisite nexus is present

---

[1] HPD criminalist Leighton Kapala weighed and analyzed this methamphetmaine.

6

may be determined by examining, _inter_ _alia_, the proximity,
accessibility, and strategic location of the firearms in relation
to the locus of drug activities.   _Id._

GALINDO carried and possessed the loaded 9 mm
semiautomatic firearm with a defaced serial number during and in
relation to his distribution and possession of methamphetamine
with intent to distribute.  This firearm carried and possessed by
GALINDO while he distributed methamphetamine to Ingram and
others, as well as when it was carried by GALINDO up into the
attic with his drugs.  Both the drugs and the loaded firearm were
found together in a jacket with a valid Hawaii driver's license
with GALINDO's picture but Timothy Mau information and a social
security card in the name of Timothy Mau.  The loaded firearm was
"easily accessible" while GALINDO distributed the methamphetamine
and while he possessed it with the intent to distribute.  Expert
witness, DEA agent James Yuen also testified that drug dealers
often carry loaded handguns to protect their drugs.  This
evidence established the nexus between the loaded firearm and the
distribution of methamphetamine and possession with the intent to
distribute by GALINDO[2].

_____

[2] See also, e.g., <u>United States v. Lomax</u>, 293 F.3d 701, 706
(4th Cir. 2002) (holding that there was sufficient evidence when,
<u>inter</u> <u>alia</u>, the defendant was found running down the street with
a loaded semiautomatic pistol in his hands and nineteen packaged
hits of crack on his person); <u>United States v. Wahl</u>, 290 F.3d
370, 376-77 (D.C. Cir. 2002) (holding that there was sufficient
evidence when, <u>inter</u> <u>alia</u>, a loaded, illegally possessed gun was

This case is clearly distinguishable from United States
v. Guess, 203 F.3d 1143, (9th Cir. 2000).  In 1992, Guess was
indicted for inter alia: Using and Carrying a Firearm in Relation
to a Drug Offense.  While Guess dealt with the defendant's plea
to "use" of a firearm under the pre-Bailey[3] meaning of
§ 924(c)(1), the Ninth Circuit nonetheless found Guess' behavior
constituted "carrying."  Id. at 1147.  Here, GALINDO was not
charged with the "use" of a firearm under the pre-Bailey
§ 924(c)(1) rather he was charged with "carrying and possessing"
a firearm during and in relation to the drug trafficking charge
in Count 2.

    b.   Count 4

Heffelfinger did not give inconsistent or perjured
testimony.  GALINDO claims that since Heffelfinger "failed to
mention the most obvious—the gun handle was broken on the left

---

within defendant's reach and in close proximity to defendant's
drug stash and a small amount of money); United States v.
Timmons, 283 F.3d 1246, 1253 (11th Cir.2002) (holding that there
was sufficient evidence when agents found a "bullet proof vest,
crack cocaine on the stove and under the cushions of the couch,
two fully loaded firearms on top of the oven and ammunition
inside the oven in the living room of [the defendant's]
apartment"); United States v. Mackey, 265 F.3d 457, 459, 462-63
(6th Cir.2001) (holding that there was sufficient evidence when
the defendant was found with 2.3 grams of crack on his person,
and an illegally possessed loaded shotgun, scales, and razor
blades were found in the house from which the defendant sold
drugs).

[3] In 1998, 18 U.S.C. § 924(c)(1) was amended to include
possession "in furtherance of" a crime of violence or a drug
trafficking crime.

side," that this "oversight" amounted to perjury.  Def. Mot. at
3.  This argument lacks merit.  Heffelfinger mentioned the "most
obvious" characteristics of the firearm when questioned by
defense counsel and accordingly, no "oversight" existed.  Even if
such an "oversight" occurred, this would not amount to perjury or
even an inconsistent statement.

        First, Heffelfinger was never specifically asked,
confronted, or made aware of the "broken handle."  What was asked
of Heffelfinger by defense counsel was if there was a clear
handle.  Heffelfinger agreed.  Defense counsel asked Heffelfinger
if the other handle was regular.  Heffelfinger agreed.  Second,
there was no evidence to indicate that the handle was broken
prior to GALINDO taking it from Heffelfinger.  Therefore, even if
Heffelfinger stated he was not aware of the broken handle this
would not have necessarily been an inconsistent statement as the
handle could have been broken while it was in GALINDO's
possession and unbeknownst to Heffelfinger.  Third, defense
counsel never directly inquired about the broken handle.
Instead, Heffelfinger was asked if there was something else about
the firearm that sticks out in his mind.  Heffelfinger answered
that the barrel extended and it had threads  on it so a silencer
could be used.  Heffelfinger also stated the barrel could popped
up, and instead of using the clip, it is possible to push a
button on the side so the barrel pops up and fire single shots.

c.    Count 8

GALINDO knowingly possessed the loaded .45 caliber Colt semiautomatic pistol found under the armrest of the car in which he was the sole occupant seated in the driver's seat.  GALINDO argues he was unaware of the firearm because he "appeared dazed." On the contrary, GALINDO's actions before, during, and after being confronted by police indicate that while he may have been tired, he was aware of his surroundings and one firearm.

GALINDO claims to have been "dazed," however, he was able to drive a car, make a turn onto King Street, turn from King Street into the parking lot, pull into the small lot, park within the lines of a stall, and stop the car before hitting the wall. GALINDO's actions were not that of a person who was unaware of his surroundings.  While he did not comply with police commands, this was because he was a felon in a stolen car with a firearm and not because he was "dazed."  He hesitated to think of a way out of the situation.  When police arrived and ordered him out of the car, GALINDO tried to start up the car and flee.  The three officers at the scene all testified that GALINDO made movements toward the firearm.  GALINDO leaned toward the firearm while officers pointed their firearm at him.  HPD Officers Wall and Partido both observed GALINDO drop his right hand toward the area of the armrest and the firearm.  Former Sergeant Fujishige saw Galindo's right hand drop to the seat near the armrest and

10

firearm.  Finally, when placed under arrest and transported from the scene, GALINDO was compliant and responded appropriately to Officer Partido's requests.

   d. <u>Counts 10 and 11</u>

    GALINDO argues that robbing Hector Ferrer of two ounces of methamphetamine does not constitute a drug trafficking crime. Once GALINDO robbed Ferrer of the two ounces of methamphetamine, GALINDO was in possession of a distributional amount of methamphetamine.  Two ounces (approximately 56.7 grams) of methamphetamine is considerably more than a user amount which DEA agent Yuen stated was an 1/8th of an ounce or less (3.54 grams).

    GALINDO argues that there was no forensic evidence to establish that what he robbed Ferrer of was methamphetamine. While there was no forensic analysis, the jury believed the testimony of Ferrer which established that Ferrer was smoking methamphetamine with Desiree Tadio; after smoking this methamphetamine Desiree alerted her boyfriend and GALINDO of the methamphetamine Ferrer possessed; and GALINDO entered the hotel room Ferrer was in, pointed a firearm at Ferrer, asked Ferrer where the drugs were, and then located the two ounces of methamphetamine and stole it.

    The jury was instructed that the government did not need to produce this methamphetamine as an exhibit at trial, but they were instructed that they needed to find beyond a reasonable

doubt that the substance was methamphetamine (Court's Instruction
No. 28) and that it was over 5 grams of pure methamphetamine
(Court's Instruction No. 27 and Verdict Form).  The jury made
this finding beyond a reasonable doubt.

### B.     The Motion for a New Trial Should Be Denied because "the Interest of Justice" does not Require it

The defendant moves this Court for a new trial under
Rule 33 of the Federal Rules of Criminal Procedure arguing that
in Counts 1 - 3, and Count 4, witnesses perjured themselves.
There has been no showing that "the interest of justice" has been
impacted by any alleged perjured testimony such that a new trial
is warranted.

Defense counsel vigorously and repeatedly challenged
the credibility of the witnesses he claims perjured themselves.
On cross examination (as well as through the examination of other
witnesses) and during closing argument he questioned their
credibility.  The jury was instructed by this Court regarding
witness credibility.  This included being told that law
enforcement officers are to be treated no differently than any
other witness and to examine cooperator Heffelfinger's testimony
with caution. (Court's Instruction Nos. 9 and 10).  The issue of
these witnesses' credibility was sufficiently presented to the
jury, and the verdicts reflect their consideration of the
testimony in view of the wealth of corroborating evidence
presented at trial.

12

1.   <u>The Standard</u>

Unlike a Rule 29 motion in which the Court must view the evidence in the light most favorable to the government, on a Rule 33 motion the Court may weigh the evidence and make its own assessment of witness credibility.  <u>United States v. Kellington</u>, 217 F.3d 1084, 1097 (9th Cir. 2000).  Even so, a motion for a new trial should be granted "'only in exceptional cases in which the evidence preponderates heavily against the verdict.'"  <u>United States v. Pimentel</u>, 654 F.2d 538, 545 (9th Cir. 1981) (internal quotation, citation omitted).  Conflicting evidence is resolved in favor of the verdict. <u>U.S. v. Rush</u>, 749 F.2d 1369, 1984 (9th Cir. 1984) citing <u>United States v. Ramos</u>, 558 F.2d 545, 546 (9th Cir. 1977).  This is not the exceptional case that warrants a new trial.

2.   <u>The Interest of Justice does not Require a New Trial</u>

GALINDO argues that a new trial should be granted because in Counts 1 - 3, and 4 false testimony was provided by witnesses such that it resulted in his conviction.  GALINDO's argument fails and the Motion for New Trial should be denied.

a.   <u>Counts 1 - 3</u>

GALINDO argues that in Counts 1 -3, "the testimony given by one of these two material witnesses is false and without it the jury might have reached a different conclusion."

13

Officers Tafaoa and Aiu gave consistent testimony that was not perjured. Officer Tafaoa unfolded the jacket in the attic near where GALINDO was first seen and found the loaded firearm found in a black holster, and the driver's license with Galindo's photograph but Timothy Mau's information and a social security card in the name of Timothy Mau within a wallet. Officer Tafaoa then placed the items back into the jacket and handed them to Officer Aiu. Officer Aiu took the jacket back to the police station where he noted the recovery of the driver's license and social security card, as well as the methamphetamine. When testifying, Officer Aiu was **never** asked about any wallet by the government or the defense. Therefore, there was no inconsistent testimony and definitely no perjured testimony. Officer Aiu's testimony that the items were recovered from the jacket is not inconsistent with Officer Tafaoa's testimony that after examining the items he placed them into the jacket and handed the jacket to Officer Aiu.

GALINDO also argues that with this alleged perjured testimony of Officers Tafaoa and Aiu, and with Charles Ingram's alleged impeached testimony it is not possible to sustain a conviction. GALINDO is mistaken. Ingram was not impeached as he did not give inconsistent statements regarding what items GALINDO brought to his house. Even without Ingram's testimony about the backpack, Heffelfinger identified the backpack as GALINDO's.

14

Additionally, this backpack was on top of another bag belonging to GALINDO.  Therefore, Ingram's testimony about the backpack only corroborates GALINDO's possession of the firearm and methamphetamine in the attic and was not needed to establish Galindo's possession of the firearm and methamphetamine in the attic.

   b. <u>Count 4</u>

   As argued previously in the section regarding sufficiency of evidence for Count 4, Heffelfinger did not provide false testimony or even inconsistent testimony.  Even if an "oversight" occurred it was minor and would not justify a new trial "in the interest of justice."

## III. <u>CONCLUSION</u>

 For the foregoing reasons, this Court should deny the defendant's request for a judgment of acquittal under Rule 29 and his request for a new trial under Rule 33.

   DATED:  May 2, 2008, at Honolulu, Hawaii.

       EDWARD H. KUBO, JR.
       United States Attorney
       District of Hawaii


        /s/ Darren W. K. Ching
      By_____
       DARREN W.K. CHING
       Assistant U.S. Attorney


       Attorneys for Plaintiff
       UNITED STATES OF AMERICA

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at his last known address:

<u>Served by Facsimile</u>:

    JACK SCHWEIGERT, ESQ.
    The Lawyers Building
    550 Halekauwila, Room 309
    Honolulu, HI 96813
    (808) 533-7490

    Attorney for Defendant


    DATED: May 2, 2008, at Honolulu, Hawaii.


                /s/ Cheri Abing
              _____