IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-00053 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SILVER JOSE GALINDO, | ) | |
| aka Daniel S. Galindo, | ) | |
| aka Timothy Mau, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL AND/OR ALTERNATIVELY FOR A NEW TRIAL; AND
ORDER GRANTING DEFENDANT'S MOTION TO
<u>CONTINUE SENTENCING</u>

On May 7, 2008, the Court heard Defendant's Motion for Judgment of

Acquittal and/or Alternatively for a New Trial (Doc. # 265) and Defendant's

Motion to Continue Sentencing (Doc. # 264).  Assistant U.S. Attorney Darren

Ching and Assistant U.S. Attorney Loretta Sheehan appeared at the hearing on

behalf of the Government; Jack Schweigert, Esq., appeared at the hearing on behalf

of Defendant.  After reviewing Defendant's motions and the supporting and

opposing memoranda, the Court DENIES Defendant's Motion for Judgment of

Acquittal and/or Alternatively for a New Trial and GRANTS Defendant's Motion

to Continue Sentencing.

BACKGROUND

The factual and procedural history of this case is lengthy so the Court

only recounts that which is necessary to its immediate determination.  On April 21,

2008, a jury convicted Defendant on the following counts: Count 1 – Felon in

Possession of a Firearm and Ammunition; Count 2 – Possession with the Intent to

Distribute 5 Grams or More of Methamphetamine; Count 3 – Possession of a

Firearm in Furtherance of a Drug Trafficking Crime; Count 4 – Felon in

Possession of a Firearm and Ammunition; Count 8 – Felon in Possession of a

Firearm and Ammunition; Count 9 – Felon in Possession of a Firearm; Count 10 –

Possession with the Intent to Distribute 5 Grams or More of Methamphetamine;

Count 11 – Possession of a Firearm in Furtherance of a Drug Trafficking Crime.[1]

On April 28, 2008, Defendant filed the Motion for Judgment of

Acquittal and/or Alternatively for a New Trial ("Motion for Acquittal") and the

Motion to Continue Sentencing.  On April 30, 2008, Defendant filed a Supplement

to the Motion for Acquittal ("Supplement") (Doc. # 269).  On May 5, 2008, the

---

[1] On May 11, 2007, the Court granted Defendant's Motion to Sever Counts 5, 6, and 7.  Trial on these charges is currently scheduled for October 2008.

Government filed an opposition to Defendant's Motion for Acquittal

("Opposition") (Doc. # 270) and an opposition to Defendant's Motion to Continue

Sentencing (Doc. # 271).

<u>STANDARDS OF REVIEW</u>

Defendant brings the Motion for Acquittal pursuant to Federal Rules

of Criminal Procedure ("Rules") 29 and 33.  Rule 29(c) provides that a defendant

may move for judgment of acquittal within seven days after a guilty verdict or after

the court discharges the jury, whichever is later.  Fed. R. Crim. P. 29.  Under Rule

29, the court must "view the evidence, which was before the jury when it returned

the verdict of guilty, in a light most favorable to the Government and determine

whether there was relevant evidence from which the jury could reasonably find the

[defendant] guilty beyond a reasonable doubt."  <u>United States v. Brandon</u>, 633 F.2d

773, 780 (9th Cir. 1980); <u>United States v. Alarcon-Simi</u>, 300 F.3d 1172, 1176 (9th

Cir. 2002) ("the relevant question is whether, after viewing the evidence in the

light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt.") (citation and

internal quotation marks omitted).  The court must not "concern itself with

determining the credibility of witnesses or the resolution of evidentiary conflict, as

those are exclusive function[s] of the jury."  <u>United States v. Rojas</u>, 554 F.2d 938,

943 (9th Cir. 1977)  However, the court "may not disregard inferences that the jury could draw from the evidence[.]"  <u>Brandon</u>, 633 F.2d at 780.

Rule 33 provides that the court may vacate any judgment and grant a new trial if the interests of justice so requires.  Fed. R. Crim. P. 33(a).  The court may weigh the evidence and make its own determination of witness credibility. <u>United States v. Kellington</u>, 217 F.3d 1084, 1097 (9th Cir. 2000).  A motion for a new trial should be granted only in "exceptional cases in which the evidence proponderates heavily against the verdict."  <u>United States v. Pimentel</u>, 654 F.2d 538, 545 (9th Cir. 1981) (internal quotation and citation omitted).  Conflicting evidence is resolved in favor of the verdict.  <u>United States v. Rush</u>, 749 F.2d 1369, 1372 (9th Cir. 1984).

Defendant brings his Motion to Continue Sentencing pursuant to Rules 2 and 45(b).  Rule 2 establishes that the Rules should be interpreted "to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay."  Fed. R. Crim. P. 2.  Rule 45(b) allows the court to extend the time by which an act must or may be done for good cause shown. Fed. R. Crim. P. 45.

4

DISCUSSION

I.  <u>Motion for Acquittal</u>

Defendant argues that he should be granted a judgment of acquittal or a new trial because: (1) the testimony tying Defendant to the .9 millimeter ("mm") semi-automatic pistol and the drugs encompassed by Counts 1 through 3 was perjured; (2) the testimony linking Defendant to the .25 caliber gun charged in Count 4 was false; (3) the evidence to sustain Defendant's conviction for "knowingly" possessing the .45 caliber firearm charged in Count 8 was insufficient; and (4) there was no evidence supporting an intent to distribute the drugs charged in Count 10 and, as Count 11 is dependent on Count 10, that charge fails as well.  In his Supplement, Defendant additionally argues that, as to Count 3, simple storage of a firearm does not equal "use" for purposes of the charging statute.

The Government contends that Defendant's Motion for Acquittal should be denied because there was sufficient evidence supporting the verdict on all counts.  Furthermore, the Government avers that the motion for new trial should be denied because the interests of justice do not require it.  The Court agrees.

A.  Counts 1 through 3

Defendant claims that the critical testimony supporting Defendant's possession of the .9 mm firearm and methamphetamine charged in Counts 1 through 3 must have been perjured because the two Honolulu Police Department ("HPD") officers who testified gave conflicting statements.  Specifically, according to Defendant, Officer Tafaoa testified that Defendant's fake identification documents, consisting of a Hawai`i driver's license and social security card (issued in the name of Timothy Mau), were taken from Defendant's wallet, which was wrapped in a jacket in the attic where Defendant was found hiding.  Conversely, Officer Aiu testified that he recovered the driver's license and social security card from the jacket.  Because there was only one driver's license and one social security card recovered, Defendant argues that either one or both of the Officers' testimony was perjured.  Defendant was prejudiced by this allegedly perjured testimony, the argument goes, and, thus, a new trial is warranted.

Initially, the Court notes that, even if Defendant's interpretation of the Officers' testimony is taken as true, the statements of Officers Tafaoa and Aiu do not conflict.  While unclear, it appears Defendant makes one or both of the following arguments with regard to the testimony: (1) the two Officers could not have separately recovered the same documents, or (2) the Officers' testimony

6

reveals an inconsistency with regard to where the identification documents were found (i.e. in the wallet, according to Officer Tafaoa, or in the jacket, according to Officer Aiu). Thus, according to Defendant, either Officer Tafaoa or Aiu testified falsely. Defendant's interpretation of the Officers' testimony is erroneous. With regard to the first argument, the fact that the identification items were "taken" from the wallet, as Officer Tafaoa allegedly testified, does not automatically mean that Officer Tafaoa was the one who took them. In fact, Officer Tafaoa could have been referring to Officer Aiu when he testified that the items were "taken" from the wallet. As to the second argument, there is no discrepancy in the location because the identification items were found inside a wallet, which was, in turn, found wrapped inside a jacket in the attic. The Officers' statements, on their face, are not conflictory and in no way lead to the conclusion that the Officers perjured themselves in this Court.

Moreover, as the Government points out in its Opposition, there was ample evidence linking Defendant to the .9 mm firearm and methamphetamine charged in Counts 1 through 3. First, the firearm was identified by Robert Tomaszyscki and Travis Heffelfinger as the one possessed by Defendant at Tomaszyscki's house one week prior. Second, the black holster containing the gun was identified by Walter Cacho, Tomaszyscki, and Heffelfinger as belonging to

7

Defendant.  Third, the Eastport backpack recovered from the residence, identified by Heffelfinger as belonging to Defendant, contained drug paraphernalia, a flip top scale, and .9 mm ammunition matching the firearm.  Fourth, the Eastport backpack was found on top of another bag belonging to Defendant, inside of which was a card from Defendant's girlfriend and an envelope addressed to Defendant.  Finally, Charles Ingram, the owner of the residence, testified that he had picked up half an ounce of methamphetamine for Defendant, that Defendant distributed two eightballs (3.54 grams) of this methamphetamine, that he and Defendant smoked some of the remainder of the methamphetamine, and that Defendant kept the rest of the methamphetamine.  It is this remaining methamphetamine (6.453 grams) that was found in the attic in close proximity to Defendant.  This evidence, when viewed in a light most favorable to the Government, was more than adequate to allow the jury to find Defendant guilty beyond a reasonable doubt on Counts 1 through 3.

Defendant further alleges that there was insufficient evidence establishing "active employment" of the .9 mm firearm as required by 18 U.S.C. § 924(c).  Again, Defendant is incorrect.  The Ninth Circuit has held that, in order to sustain a conviction under 18 U.S.C. § 924(c), the government must show that the defendant intended to use the firearm to promote or facilitate the drug crime.

8

United States v. Krouse, 370 F.3d 965, 967 (9th Cir. 2004). Evidence of this intent is sufficient when facts in evidence reveal a nexus between the guns discovered and the underlying offense. Id. at 968. Whether the requisite nexus is present may be determined by examining, among other things, the proximity, accessibility, and strategic location of the firearms in relation to the locus of drug activities. Id. Testimony at the trial indicated that: (1) Defendant carried the .9 mm firearm while he distributed methamphetamine to Ingram and others; (2) the firearm was carried into the attic with the remainder of the methamphetamine, where both were later recovered in near proximity to Defendant, along with Defendant's identification documents; and (3) drug dealers often carry loaded handguns to protect their drugs. This evidence was more than sufficient to allow a reasonable jury to determine, again after viewing the evidence in the light most favorable to the prosecution, that the essential elements of Counts 1 through 3 were proven beyond a reasonable doubt.

B. Count 4

Defendant avers that Count 4 was based on false testimony because Heffelfinger, the only witness to connect Defendant to the .25 caliber firearm charged in Count 4, did not mention that the handle of the gun was broken on the left side when asked at trial if there was anything unusual about the gun's

9

condition.  Therefore, the argument goes, the Court should, in the interests of justice, hold this oversight against the Government, especially in light of the fact that Heffelfinger was allegedly motivated to gain a reduction in his 180-month prison sentence.

   Defendant's argument is unavailing.  First, Heffelfinger was asked by defense counsel if the firearm had a clear handle, to which Heffelfinger answered affirmatively.  Second, there was no testimony during the trial indicating that the handle was broken prior to Heffelfinger's giving the gun to Defendant.  Thus, even if Heffelfinger stated that he had no knowledge of the broken handle, which he did not, such a statement could have been the result of the handle having been broken after the gun was in Defendant's possession.  Third, Heffelfinger was never specifically asked whether the handle was broken.  Instead, Heffelfinger was asked if there was something else that stuck out in his mind about the firearm, to which he replied that it had an extended barrel for use with a silencer, a barrel that could be "popped up," and the ability to fire single shots.  In short, Heffelfinger's testimony reveals no falsehood and, accordingly, there is no basis for this Court to override the jury's verdict as to Count 4.

C.  Count 8

Defendant contends that the evidence at trial establishes that he could not have acted "knowingly" with regard to his possession of the loaded .45 caliber Colt semi-automatic pistol charged in Count 8 because he was "dazed" when confronted by HPD.  In essence, Defendant claims that his actions leading up and during his arrest reveal a lack of awareness sufficient to negate the required element that he knew he was in possession of the .45 caliber firearm as charged in Count 4.  The Court has found this argument to be without merit on prior occasions and finds so again here.

Defendant's actions leading up to, during, and after being confronted by HPD indicate that, while he may have been tired, he was aware of his surroundings and his possession of the firearm.  First, Defendant makes much of the fact that he drove the vehicle, which was stolen and had vanity license plates, slowly and with only the parking lights on, as if this conduct so invites an arrest as to reveal a person who does not know what he is doing.  On the contrary, Defendant was able to drive a car to a specific location without accident or incident, park properly, and stop the vehicle.  Second, Defendant argues that his failure to immediately comply with the gun-wielding HPD officers who awoke him reveals a lack of knowingness.  Again, to the contrary, this behavior could be

interpreted by a jury as that of a convicted felon in possession of a stolen car and a loaded weapon with a significant interest in not complying with the HPD officers' demands for him to exit the vehicle. Third, the HPD officers at the scene testified that Defendant moved towards the firearm when first confronted, clearly indicating an awareness of its presence. Finally, when being transported from the scene, Defendant was cogent and compliant with HPD Officer Partido. There is ample evidence supporting the jury's determination that Defendant acted knowingly with regard to his possession of the .45 caliber firearm.

D. Counts 10 and 11

Lastly, Defendant argues that robbing Hector Ferrer of two ounces of methamphetamine, as charged in Count 10, does not constitute a drug "trafficking" crime because there was no intent to distribute the drug and no forensic evidence establishing that the substance was methamphetamine. Defendant further contends that, because Count 11 is dependent on Count 10, it too should be dismissed.

Once Defendant robbed Ferrer of the two ounces of methamphetamine, he was in possession of a statutorily-defined distributional amount of the drug. In addition, while there was no forensic evidence to establish that the substance was methamphetamine, there was testimony at trial establishing that: (1) Ferrer was smoking methamphetamine with Desiree Tadio in a hotel

12

room; (2) after smoking this methamphetamine, Tadio alerted her boyfriend and Defendant of the methamphetamine possessed by Ferrer; and (3) Defendant subsequently entered the hotel room, pointed a firearm at Ferrer, asked him where the drugs were, and then stole the remaining two ounces of methamphetamine. Finally, the jury was specifically instructed that, while the Government did not need to produce the methamphetamine as an exhibit, they did need to find beyond a reasonable doubt that the substance was methamphetamine. This evidence was sufficient for the jury to determine that Defendant was guilty beyond a reasonable doubt as to Count 10 and Count 11.

For these reasons, the Court finds that Defendant has failed to meet Rule 29's standard for a judgment of acquittal. When viewed in a light most favorable to the Government, there was relevant evidence from which the jury could have found Defendant guilty beyond a reasonable doubt of all the crimes discussed above. Brandon, 633 F.2d at 780. Similarly, the interests of justice do not warrant a new trial under Rule 33 as Defendant has failed to meet his burden of proving that his conviction was an exceptional situation in which the evidence weighs heavily against the verdict. Pimentel, 654 F.2d at 545.

For these reasons, the Court DENIES Defendant's Motion for Acquittal.

II.  <u>Motion to Continue Sentencing</u>

Defendant avers that his sentencing on the charges for which he was convicted should be continued until after the October trial of the severed counts so as to eliminate unjustifiable expense.  In essence, Defendant claims that his court appointed counsel has expended so much time on this matter that consolidating the first sentencing with a possible second sentencing on the severed charges would result in less expense to the Court.  The Government argues that, in light of the reasons to continue the sentencing provided by Defendant, there is no good cause to grant the motion.

The Court finds that consolidating Defendant's scheduled sentencing with the potential future sentencing is the best course of action here.  Such consolidation will eliminate unjustifiable expense in the way of additional attorney's fees and will also allow the United States Probation Office to prepare a single Presentence Investigation Report reflective of all charges for which Defendant has been convicted.  As such, the Court GRANTS Defendant's Motion to Continue Sentencing.

CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion

for Judgment of Acquittal and/or Alternatively for a New Trial and GRANTS

Defendant's Motion to Continue Sentencing.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, May 9, 2008.



_____
David Alan Ezra
United States District Judge

United States v. Galindo, CR No. 04-00053 DAE; ORDER DENYING
DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR
ALTERNATIVELY FOR A NEW TRIAL; AND ORDER GRANTING
DEFENDANT"S MOTION TO CONTINUE SENTENCING

15